JUAN DÍAZ DÍAZ, peticionario, *v.* EMILIO TORRES MARRERO, ALCAIDE CAMPAMENTO PENAL LIMÓN DE MAYAGÜEZ, demandado.

*Número*: O-72-237      *Resuelto*: 21 de diciembre de 1973

*Santos P. Amadeo,* abogado del peticionario; *Myriam Naveira de Rodón, Procuradora General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

La representación legal de Juan Díaz Díaz ha radicado una moción de reconsideración a una resolución de fecha 30 de agosto de 1973, que declaró sin lugar una petición de hábeas corpus. Al solicitar la reconsideración expresó que "es necesario que este Tribunal dé las razones por las cuales declaró sin lugar la apelación, o como la llama este Tribunal 'petición de hábeas corpus'." No hay tal apelación. Equivocadamente la representación legal del peticionario entiende que hay pendiente el recurso, cuando de los autos surge que no se ha radicado tal escrito contra la sentencia dictada

por el Tribunal Superior, Sala de Aguadilla. Veamos lo ocurrido.

Juan Díaz Díaz por derecho propio, invocando la jurisdicción original de este Tribunal, radicó el 4 de agosto de 1972 una petición de hábeas corpus. Alegó que el abogado que lo representó en una causa criminal ante la Sala de Aguadilla del Tribunal Superior le aconsejó que si se declaraba culpable podría conseguirle de 1 a 3 ó de 1 a 5 años que era el máximo de delito de tentativa de robo y que le podía conseguir la probatoria si se declaraba culpable, pues el juez lo tendría en consideración. Alegó que no le cumplieron la promesa y que se le sentenció a una pena excesiva.

Referimos el caso a la Sociedad Para Asistencia Legal "a fin de que dicha Sociedad proporcione al peticionario la asistencia que fuera necesaria."

La Sociedad radicó el 28 de noviembre de 1972 un informe haciendo constar que el peticionario había radicado otra petición de hábeas corpus ante la Sala de Aguadilla del Tribunal Superior, y que luego de celebrada una vista fue declarada sin lugar. Acompañó copia de la sentencia dictada por el Tribunal de Aguadilla en la cual se determinó que el abogado que representó al peticionario no le había hecho promesa alguna al efecto de que le sería impuesto el mínimo de la pena si se declaraba culpable; que el acusado estuvo bajo fianza antes del juicio y que conferenció varias veces con su abogado. Concluye el informe de Asistencia Legal con una solicitud de relevo de la representación del peticionario.

Con fecha 6 de diciembre de 1972 dictamos resolución declarando sin lugar la petición de hábeas corpus radicada ante este Tribunal. El 12 de diciembre comparece en autos el abogado Santos P. Amadeo para que se le tuviera como uno de los abogados del peticionario. En dicho escrito el abogado hace constar "que el aquí peticionario ha contratado los servicios profesionales de este letrado para que lo represente en este recurso de hábeas corpus. . . ." Informa que había soli-

citado la transcripción de evidencia en la Sala de Aguadilla y que se proponía radicar un escrito adicional al informe que radicó Asistencia Legal. Con fecha 3 de enero de 1973 solicitó la reconsideración de nuestra resolución de 6 de diciembre anterior, declarando sin lugar el escrito radicado por el peticionario. Solicitó además prórroga para radicar memorandum en apoyo de la reconsideración.

A la petición de reconsideración radicada y solicitud de prórroga dictamos la siguiente resolución:

"Vistas las mociones radicadas por el Lic. Santos P. Amadeo en las que solicita reconsideración de la resolución de este Tribunal de 6 de diciembre de 1972 y para que se le tenga como uno de los abogados del peticionario en el recurso de epígrafe, el Tribunal se da por enterado de la nueva representación legal del peticionario y le concede un término de treinta (30) días a partir de la fecha de radicación en este Tribunal de la transcripción del record para la radicación del escrito adicional del peticionario."

El 22 de junio de 1973 radicó un alegato que tituló "Alegato del Peticionario Apelante en apoyo del Recurso de Apelación". En dicho alegato se expresa lo siguiente:

"Que el peticionario-apelante radicó ante el Tribunal Superior de Puerto Rico, Sala de Aguadilla un recurso de Hábeas Corpus (CS72-743) en el que alegaba que no tuvo una asistencia diligente y efectiva, sino pro-forma. Que la declaración de culpabilidad fue hecha bajo falsas promesas en cuanto a las penalidades que se le iban a imponer.

Que aunque no se alegó en la solicitud de hábeas corpus, declarada sin lugar el 2 de mayo de 1972 por el Tribunal inferior, su Magistrado Hon. Roberto Veray Torregrosa, Juez Superior, del record del proceso criminal surge que el peticionario no renunció expresa, inteligente y conscientemente el derecho a juicio por jurado, y, además que la declaración de culpabilidad no fue hecha inteligente y conscientemente."

Pasó entonces a discutir los errores señalados y terminó solicitando "la revocación de las sentencias impuéstales al

peticionario apelante por el Tribunal inferior el 30 de junio de 1971."

El Procurador General con fecha 9 de agosto de 1973 radicó su informe.

Así vemos que el abogado del peticionario, luego de solicitar prórroga para radicar una moción de reconsideración a nuestra determinación de 6 de diciembre de 1972, en la cual declaramos sin lugar la petición de hábeas corpus radicada ante este Tribunal el 4 de agosto anterior, lo que hace es presentar un alegato, que afirma ser en apoyo de un recurso de apelación en el caso de hábeas corpus radicado en la Sala de Aguadilla del Tribunal Superior y que tiene el número CS72-743. No aparece que en dicho caso se hubiera presentado "Escrito de Apelación".

La sentencia fue dictada el 2 de mayo de 1972 y archivada en autos el día 9 siguiente. El siguiente documento que aparece radicado en dicho expediente con fecha 12 de diciembre de 1972 es la "Solicitud de Transcripción de Evidencia con Preferencia" de la cual acompañó copia a la Moción radicada ante este Tribunal el mismo día 12 de diciembre de 1972 y en la cual hace constar "que el aquí peticionario ha contratado los servicios profesionales para que lo represente, *en recurso a radicarse próximamente. . . .*" No se radicó apelación contra la sentencia. Como antes consignamos, el peticionario radicó una nueva solicitud de hábeas corpus ante este Tribunal el 4 de agosto siguiente, la cual fue declarada sin lugar.

Es por esa razón que consideramos como una nueva petición de hábeas corpus ante este Tribunal el escrito radicado por la representación del peticionario en el que se alegan fundamentos diferentes a los expuestos en la petición de hábeas corpus radicada en Aguadilla para atacar la sentencia. Y por ser frívolos los dos fundamentos apuntados, la declaramos sin lugar el 30 de agosto del corriente. Decimos que son frívolos porque según el abogado del peticionario, el juez sentenciador "abdicó la obligación que le impone la jurispru-

dencia del Tribunal Supremo de Estados Unidos y los casos
de este Tribunal de *Pueblo* v. *Juarbe de la Rosa* y *Pueblo* v.
*Delgado Martínez*, supra, de inquirir él personalmente y no a
través del abogado del acusado si éste había renunciado inteli-
gentemente y conscientemente el derecho a juicio por jurado."
El récord demuestra palmariamente que fue todo lo contrario.
El juez personalmente explicó al acusado su derecho a ser
juzgado por jurado cumpliendo con lo resuelto en nuestras
decisiones citadas por el peticionario. Y, se cercioró además de
que el abogado le había ya advertido de la naturaleza y las
consecuencias de la renuncia. A continuación lo ocurrido
según surge de la transcripción de evidencia:

"Hon. Juez:

Señor Díaz, usted escuchó a su abogado manifestar que re-
nuncia al derecho constitucional que le asiste a juicio por jurado
en los tres cargos de delitos graves, Tentativa Para Cometer
Violación, Tentativa Para Cometer Robo y Escalamiento en
Primer Grado.

R. Sí, señor.

P. A usted alguien lo ha amenazado o le ha ofrecido algo
para que renuncie a ese derecho?

R. No, señor, nadie.

P. Usted renuncia a ese derecho de juicio por jurado libre y
voluntariamente?

R. Sí, señor.

P. Está consciente que ese es un derecho que le garantiza la
Constitución del Estado Libre Asociado de Puerto Rico, y con-
siste en que doce personas del distrito judicial de Aguadilla, que
compone los pueblos de Aguada, Rincón, Moca, San Sebastián,
Larese Isabela, se sientan ahí en esas sillas después de ser
escogidos mediante preguntas que le hace la defensa y el fiscal;
escuchan la prueba de El Pueblo y la defensa si tiene usted a
bien presentar alguna, ya que usted no está obligado a presentar
prueba, sino es al fiscal a quien le corresponde probar su culpa-
bilidad más allá de toda duda razonable; escuchan las instruc-
ciones del juez y luego se retiran a deliberar y por lo menos
nueve de ellos tienen que ponerse de acuerdo y votar afirmativa-
mente lo mismo para encontrarlo a usted absuelto o culpable en

cualquiera de los tres casos. Que de usted renunciar a ese derecho, en lugar de ser esas doce personas sería única y exclusivamente este juez, quien determine su inocencia o culpabilidad. Usted entiende bien eso?

R. Sí, señor.

P. Sabe que en lugar de doce personas, sería únicamente este juez, quien va a determinar su culpabilidad o inocencia?

R. Sí, señor.

P. Y a pesar de eso, usted se reafirma en esa renuncia?

R. Sí, señor.

P. A usted nadie lo ha amenazado, ni le ha ofrecido nada para que renuncie a ese derecho?

R. No, señor.

P. Usted lo hace libre y voluntariamente de su parte?

R. Sí, señor.

P. No tiene ninguna duda, su abogado le ha explicado eso también?

R. Sí, señor.

P. Usted entendió lo que su abogado le explicó?

R. Sí, señor.

P. Fue lo mismo que yo le volví a repetir, la diferencia entre juicio por jurado y juicio por Tribunal de Derecho?

R. Sí, señor.

P. El Tribunal acepta la renuncia a juicio por jurado por entender que la misma es hecha en forma voluntaria e inteligente."

Es claro pues que el juez personalmente le informó al acusado con lujo de detalles la. diferencia entre ser juzgado por un jurado y por tribunal de derecho, cerciorándose así de que fue una decisión libre y voluntaria del acusado, y cumpliendo con todo lo que exige nuestra jurisprudencia.

Analicemos ahora la declaración de culpabilidad. Sostiene el peticionario que "no hubo una declaración de culpabilidad hecha inteligente y concienzudamente. El juez sentenciador no inquirió del peticionario-apelante la edad que tenía, si él estaba afectado de sus facultades mentales, qué preparación escolar tenía, si él sabía los derechos constitucionales que renunciaba al declararse culpable; si sabía que al declararse

culpable no podía apelar de la sentencia impuéstale ante este Tribunal, si él tenía récord penal, o sea, su experiencia con la justicia. En otras palabras, el juez sentenciador no inquirió del peticionario-apelante ningún hecho que demostrara si la renuncia fue inteligente y consciente; así como también al peticionario-apelante admitir culpabilidad lo hacía inteligente y conscientemente." El récord demuestra la incorrección de esta afirmación. A continuación copiamos el incidente relacionado con la alegación de culpabilidad del apelante:

"HON. JUEZ:

Señor Díaz, usted escuchó manifestar a su abogado, que hace alegación de culpabilidad en el delito de Tentativa Para Cometer Violación, en el otro delito de Tentativa Para Cometer Robo y en la Infracción al Artículo 4 de la Ley de Armas.

R. Sí, señor.

P. Usted hace eso libre y voluntariamente?

R. Sí, señor.

P. Alguien lo ha amenazado o le ha hecho oferta de clase alguna para que usted se declare culpable?

R. No, señor, nadie.

P. Le han prometido probatoria o mínimo para que se declare culpable?

R. No, señor.

P. Usted sabe que el delito de Tentativa Para Cometer Robo conlleva una penalidad de uno a diez años de presidio con trabajo forzoso?

R. Sí, señor.

P. El delito de Tentativa Para Cometer Violación conlleva una pena máxima de cincuenta años de presidio con trabajo forzoso?

R. Sí, señor.

P. Por infracción al artículo 4 de la Ley de Armas conlleva una pena de seis meses a dos años de cárcel. ¿Entiende usted eso?

R. Sí, señor.

P. Entendiendo eso se ratifica usted en la alegación de culpabilidad?

R. Sí, señor.

P. Usted discutió esto con su abogado?

R. Sí, señor.

P. Usted habló con él?

R. Sí, señor.

P. El Tribunal acepta la alegación de culpabilidad en los tres casos por entender que la misma es hecha en forma voluntaria e inteligente." (Véase T.E. págs. 8 a 10.)

Para sostener su apuntamiento el peticionario a través de su abogado citó los casos de *Johnson* v. *Zerbst,* 304 U.S. 464 (1938) y *Patton* v. *United States,* 281 U.S. 276 (1930). El primero de estos dos casos considera la cuestión referente a la renuncia a ser representado por abogado en una causa criminal, y en el segundo se considera la validez de la renuncia hecha por el acusado para que el juicio siguiera ventilándose ante un jurado compuesto de once personas por haberse enfermado uno de los jurados. Ninguno de ellos trata sobre la cuestión que plantea la validez de una declaración de culpabilidad.

El acto de declararse culpable es de gran trascendencia en el procedimiento criminal. El acusado mediante su alegación de culpabilidad renuncia a una serie de derechos fundamentales que le garantizan la Constitución y las leyes. El Estado queda relevado de la celebración de proceso que puede ser largo y costoso. Es por eso, que el acto debe estar rodeado de todas las garantías, especialmente si se tiene en cuenta que una gran parte de las personas acusadas de delitos graves se declaran culpables. De acuerdo con datos en poder de la Administración de Tribunales, para el año 1972–73 de los 5,020 casos por delitos graves resueltos en ese año 3,045, ó sea, un 61% lo fueron por alegación de culpabilidad. Es conveniente para una mejor administración de la justicia que el récord revele que al declararse culpable, el acusado lo hace libre y voluntariamente, consciente de los derechos que renuncia y las consecuencias que la alegación conlleva. De esta forma podrá disponerse más rápidamente de cualquier alegación que se formule contra la sentencia posteriormente.

Las vigentes Reglas de Procedimiento Criminal de 1963 contienen la norma a seguirse en casos en los cuales el acusado se declara culpable. La Regla 70 dispone que "[e]l tribunal no aceptará la alegación de culpabilidad sin determinar primeramente que la misma se hace voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación." Corresponde esta regla a la Núm. 11 de las de Procedimiento Criminal de la jurisdicción federal. [1]

La Corte Suprema de los Estados Unidos ha considerado la cuestión que ahora nos ocupa en una serie de casos recientes. Comenzando con *Machibroda* v. *United States*, 368 U.S. 487 (1962), siendo el último *Fontaine* v. *United States*, 411 U.S. 213 (1973).

■ *McCarthy* v. *United States*, 394 U.S. 459 (1969), expresa que la Regla 11 requiere que el juez inquiera del acusado si comprende la naturaleza de los cargos que contra él penden y si está consciente de su admisión de culpabilidad. Establece que la Regla 11 tiene dos propósitos. Primero "está diseñada para ayudar al juez de distrito en su determinación de que la alegación de culpabilidad de un acusado es en realidad voluntaria, como lo requiere la Constitución." Segundo, que conste en récord al momento de hacer la alegación de culpabilidad, todos los factores que determinan que fue voluntaria y consciente de sus consecuencias. Pasa entonces a exponer:

---

[1] La Regla 11 de las de Procedimiento Federal establece:

"A defendant may plead not guilty, guilty or, with the consent of the court *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty ·or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

"Estos dos propósitos encuentran su génesis en la naturaleza de la alegación de culpabilidad. Un acusado que hace dicha alegación simultáneamente renuncia a varios derechos constitucionales, incluyendo su privilegio contra la auto-incriminación compulsoria, su derecho a juicio por jurado y su derecho a carearse con sus acusadores. Para esta renuncia ser válida bajo la Cláusula de Debido Proceso, debe tratarse de 'una dejación o abandono de un derecho o privilegio conocido.' *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938). Consecuentemente, si la alegación de culpabilidad de un acusado no es igualmente voluntaria e inteligente, se habrá obtenido en violación del debido proceso y sería, por consiguiente, nula. Por otra parte, debido a que una alegación de culpabilidad es una admisión de todos los elementos de una acusación criminal formal, no puede ser realmente voluntaria a menos que el acusado posea ciertos conocimientos respecto a la relación de la ley con los hechos.

Así que, además de instruir al juez que examine la comprensión del acusado de la naturaleza de la acusación y las consecuencias de su alegación, la Regla 11 requiere que el juez se satisfaga de que la alegación encuentra base en los hechos del caso. El juez debe determinar 'que la conducta en que el acusado admite haber incurrido es constitutiva del delito imputado al cuál se ha declarado culpable o de uno en él incluido.' El requerir este examen de la relación entre la ley y los actos que el acusado admite haber cometido persigue el propósito de 'proteger a un acusado que se encuentre en la posición de alegar voluntariamente con conocimiento de la naturaleza del cargo, pero sin darse cuenta que su conducta en realidad no cae dentro de la acusación'."

*Halliday* v. *United States,* 394 U.S. 831 (1969) le dio efecto prospectivo a *McCarthy.* Ver además *Boykin* v. *Alabama,* 395 U.S. 238 (1969); *Brady* v. *United States,* 397 U.S. 742 (1970).

Aunque algunas jurisdicciones estatales han interpretado la reciente jurisprudencia del Tribunal Supremo a que acabamos de aludir como que requiere enumerarle al acusado todos los derechos y defensas que renuncia al declararse culpable, *In Re Tahl,* 460 P.2d 449–456 (Cal. 1969), general-

mente se acepta que no es necesario hacerle saber uno por uno todos esos derechos. *Stinson* v. *Turner*, 473 F.2d 913 (10th Cir. 1973); *United States* v. *Frontero*, 452 F.2d 406, 415 (5th Cir. 1971). Sostienen estos últimos que *McCarthy* y *Boykin,* al enumerar las garantías constitucionales que se renuncian al declararse culpable lo hicieron con el propósito de hacer resaltar la importancia que tiene una declaración de culpabilidad.

El procedimiento para determinar si una declaración de culpabilidad es voluntaria e inteligentemente hecha no requiere determinado ritual. *United States* v. *Warwar,* 478 F.2d 1183 (1st Cir. 1973). Lo que se requiere es que el juez se cerciore de que el acusado está consciente de cuál es el delito y los hechos que se le imputan, le aperciba de su derecho a que su caso se vea ante jurado, y que es el Estado el que tiene que establecer los hechos que le imputan más allá de duda razonable teniendo el derecho a no declarar y a que se le citen testigos para su defensa; informarle de la pena que el delito por el cual está procesado conlleva, haciéndole saber el mínimo y el máximo, que si se le imputan dos o más cargos las penas pueden imponérsele concurrentemente, o consecutivamente y que si comete un delito posteriormente, la pena por ese delito es más onerosa por ser reincidente. Y lo más importante que la declaración de culpabilidad sea voluntaria y consciente de sus consecuencias y que no medien promesas de clase alguna. Ver *Stinson* v. *Turner,* supra; *Eagle Thunder* v. *United States,* 477 F.2d 1326 (8th Cir. 1973); *United States* v. *Warwar,* supra; *Hinds* v. *United States,* 429 F.2d 1322 (9th Cir. 1970); *Flores* v. *United States,* 337 F.Supp. 45 (D.C.P.R. 1971); *ABA Standards Relating to Pleas of Guilty* (1968 Draft), Judicial Conference of the United States Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure for the United States District Courts (1971) 52 F.R.D. 409 (1971). Ver Regla 11 (c) pro-

puesta; Nota, *Plea Bargaining*, 56 Minn. L. Rev. 718 (1972) ; Nota, *Restructuring the Plea Bargain*, 82 Yale L. J. 286 (1972) ; Thompson, *The Judges Responsibility on a Plea of Guilty*, 62 W. Va. L. Rev. 213 (1960).

En el presente caso el récord revela que el acusado no era un analfabeto. Había residido desde los seis años en los Estados Unidos y allá había estudiado hasta el segundo año de escuela superior. Las contestaciones al interrogatorio a que fue sometido en el caso de hábeas corpus visto en Aguadilla demuestra que es poseedor de una mente despierta y coordinada. Ciertamente no demuestra que estuviera privado de sus facultades mentales. El juez le preguntó si la alegación la hacía libre y voluntariamente, si lo habían amenazado o le habían prometido algo para que se declarara culpable. A todas contestó en la negativa. El juez informó el mínimo y el máximo que conllevaba cada delito por los cuales se le acusaba y aun más se cercioró que había discutido el asunto con su abogado. Si a todo esto se añade que previo a la declaración de culpabilidad cuando el acusado renunció a que su caso se viera ante jurado, el juez al examinarlo le informó de los casos que contra él pendían, del derecho que tenía a ser juzgado por doce hombres que tenían que ser vecinos de los pueblos de Aguada, Rincón, Moca, San Sebastián, Lares, Isabela y Aguadilla, que no tenía que presentar prueba, y que al fiscal era al que le correspondía probar su culpabilidad más allá de duda razonable. Ciertamente se cumplió sustancialmente con los requisitos anteriormente expuestos. No vemos cómo pueda seriamente sostenerse que la alegación de culpabilidad del peticionario se hizo sin determinar primeramente que la misma fue voluntaria, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación. De ahora en adelante los jueces deben tener especial cuidado cuando se hace alegación de culpabilidad, de que del récord surja que se ha cumplido con los requisitos que antes hemos reseñado.

Por todo lo expuesto, *procede que se declare sin lugar la moción de reconsideración.*

