EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Giovanni Román Mártir<br><br>Recurrido | Certiorari<br><br>2007 TSPR 2<br><br>169 DPR _____ |

Número del Caso: CC-2005-229

Fecha: 11 de enero de 2007

Tribunal de Apelaciones:

Región Judicial de Bayamón-Panel XII

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz, la Juez Pesante Martínez y el Juez Soler Aquino

Oficina del Procurador General:

Lcdo. Ricardo E. Alegría Pons

Abogado de la Parte Recurrida:

Lcdo. Carlos D. Riestra Cortés
Procurador General Auxiliar

Materia: Infracción a los artículos 166, 171, 180 del Código Penal y el Artículo 18 de la Ley Núm. 8 de 5 de agosto de 1987.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

      Peticionario

         v.                      CC-2005-0229

Giovanni Román Mártir

      Recurrido


PER CURIAM


San Juan, Puerto Rico, a 11 de enero de 2007.

El caso de autos nos brinda la oportunidad de resolver si el Tribunal de Apelaciones erró al asumir jurisdicción sobre un "Recurso de Apelación" presentado por un recluso, un (1) año después de dictada sentencia condenatoria, producto de una alegación de culpabilidad, acogiendo el referido recurso como una moción bajo la Regla 192.1 de Procedimiento Criminal, *infra*, y trasladándolo al Tribunal de Primera Instancia para su disposición. Recurre ante nos el Procurador General. Veamos los hechos que originan el presente recurso.

I

El 31 de enero de 2003, el señor Giovanni Román Mártir, en adelante señor Román Mártir o el acusado, fue denunciado por infringir los artículos 166, 171 y 180 del Código Penal de 1974, según enmendado, que tipifican los delitos de apropiación ilegal agravada, escalamiento agravado y daño agravado, respectivamente.[1] Además, fue denunciado por violar el artículo 18 de la Ley para la Protección de la Propiedad Vehicular, que tipifica el delito de apropiación ilegal de vehículo de motor.[2] Específicamente, se le imputó haber penetrado la residencia habitada por la señora Carmen Villafañe Pagán con la intención de cometer el delito de apropiación ilegal, causar daños a dicha propiedad al forzar su penetración, apropiarse ilegalmente de joyas, un vehículo de motor y otros bienes muebles de considerable valor.

El 31 de enero de 2003, se determinó causa probable para el arresto del señor Román Mártir por todos los delitos imputados. Asimismo, el 14 de abril de 2003, celebrada la vista preliminar que dispone la Regla 23 de Procedimiento Criminal[3], se determinó causa probable para acusar al señor Román Mártir por todos los delitos imputados.[4]

---

[1] 33 L.P.R.A. ant. secs. 4272, 4277 y 4286.

[2] 9 L.P.R.A. sec. 3217.

[3] 34 L.P.R.A. Ap. II.

[4] Apéndice del recurso de *Certiorari*, pág. 5.

El Ministerio Público procedió a presentar ante el Tribunal de Primera Instancia las correspondientes acusaciones. Todas alegaban la condición de reincidente habitual del acusado. Específicamente, las acusaciones notificaban que el señor Román Mártir fue convicto y sentenciado los días 5 de noviembre de 1993 y 17 de junio de 1997, por la comisión de los delitos graves de daños agravados y amenaza a funcionario de justicia, respectivamente, y que las referidas sentencias advinieron finales y firmes en los casos criminales números SP1993G000101 y FJ1997G003507.[5]

El 30 de abril de 2003, el defensor de oficio del acusado presentó ante el Tribunal de Primera Instancia una moción de supresión de identificación.[6] El 23 de julio de 2003, el señor Román Mártir presentó, por derecho propio, una moción en la que solicitó la celebración de una vista, pues ya se había pautado la fecha del juicio y aún no se había dilucidado la moción de supresión de identificación.[7] Además, informó al tribunal que no había podido entrevistarse con su nuevo abogado de oficio, a pesar de que restaban pocos días para la celebración del juicio en su fondo, pautado para el 31 de julio de 2003.[8]

---

[5] Íd., págs. 6-9.

[6] Íd., pág. 23.

[7] Íd.

[8] Íd., págs. 23-24.

No obstante, previo al acto del juicio, el Ministerio Público y la defensa del acusado negociaron un preacuerdo sobre alegación. El preacuerdo consistió en lo siguiente: el acusado se declararía culpable de todos los delitos imputados, a cambio de lo cual el Ministerio Público se obligaría a eliminar la alegación sobre reincidencia habitual incluida en todas las acusaciones. El tribunal aceptó la alegación preacordada por las partes.

Así las cosas, el 31 de julio de 2003, llamado el caso para juicio en su fondo, compareció en sala, tanto el fiscal como el acusado, asistido de su abogado, licenciado Ángel R. Vázquez Cintrón. Luego de leérsele al señor Román Mártir las acusaciones en su contra, y preguntado por el tribunal qué alegación hacía, el acusado manifestó que se declaraba culpable. Culpable, en cada uno de los cuatro (4) delitos que le fueron imputados. El señor Román Mártir solicitó que se dictara sentencia en su contra en el acto.[9]

A renglón seguido, el Tribunal de Primera Instancia aceptó las declaraciones de culpabilidad del acusado, dictando, en esa misma fecha, cuatro (4) sentencias de culpabilidad, una por cada delito confesado. El tribunal hizo constar en sus sentencias que el señor Román Mártir, en adelante, también denominado como el convicto, realizó las alegaciones de culpabilidad voluntariamente, con

---

[9] Íd., págs. 10-13.

conocimiento de la naturaleza de los delitos graves imputados y de las consecuencias de las mismas.[10]

El Tribunal de Primera Instancia condenó al señor Román Mártir a cumplir las penas siguientes: ocho (8) años de reclusión carcelaria por infracción al artículo 171 del Código Penal, *supra*, seis (6) años de prisión por violación a su artículo 166, *supra*, seis (6) años de cárcel por quebrantar el artículo 18 de la Ley para la Protección de la Propiedad Vehicular, *supra*, y dos (2) años de reclusión carcelaria por infracción al artículo 180 del Código Penal, *supra*. Dispuso que los años de prisión fueren cumplidos concurrentes entre sí, y de forma consecutiva con cualquier otra sentencia que el convicto estuviese cumpliendo en ese momento.[11]

El 5 de septiembre de 2003, ya advenidas finales y firmes las referidas sentencias, el señor Román Mártir presentó ante el Tribunal de Primera Instancia, por derecho propio, una "Moción de Rebaja de Sentencia". El 16 de septiembre de 2003, ese tribunal rechazó de plano la moción.[12] El convicto no recurrió de dicha denegatoria.

El 20 de julio de 2004, el señor Román Mártir presentó, también por derecho propio, y esta vez ante el Tribunal de Apelaciones, un "Recurso de Apelación". Citamos en su

---

[10] Íd.

[11] Íd.

[12] Íd., pág. 24.

totalidad las exposiciones, alegaciones y súplica que hiciera en este recurso[13]:

Al Honorable Tribunal

Comparece el Peticionario de Epígrafe En Forma Pauperis y Por Derecho Propio y Ante Este Honorable Tribunal de Justicia y Muy Respetuosamente Expone Alega y Solicita.

1) Que el Peticionario se encuentra extinguiendo una sentencia impuesta por el Honorable Tribunal de Bayamón el día 31 de julio de 2003.

2) Que el Peticionario recurre ante este Honorable Circuito de Apelaciones en Apelación a las sentencias impuestas por el Tribunal Superior de Bayamón.

3) Que el Peticionario recurre en Apelación a las sentencias impuestas **ya que a este se le violaron sus derechos como acusado y le fue violado el debido proceso de ley** que le cobija en cualquier proceso criminal al que fue sometido.

4) Que el Peticionario solicita de este Honorable Tribunal que le asigne una representación legal de oficio para que siga con el proceso de Apelación al que este solicita

Por Todo Lo cual Suplica y Apela al sentimiento de justicia y Equidad de este Honorable Tribunal de justicia para que declare Ha Lugar el presente recurso con cualquier otro pronunciamiento que en derecho proceda.

Respetuosamente sometido (énfasis nuestro).[14]

El 24 de enero de 2005, el Tribunal de Apelaciones emitió una resolución, archivada en autos copia de su notificación a las partes el 11 de febrero de 2005, en la que reconoció que carecía de jurisdicción para revisar las

---

[13] Por ser innumerables los errores gramaticales contenidos en el escrito del convicto y para no obstaculizar irrazonablemente la lectura, hemos optado por no identificarlos.

[14] Apéndice del recurso de *Certiorari*, págs. 17-19.

sentencias condenatorias que pesaban contra el allí peticionario. Ello, porque el denominado "Recurso de Apelación" se había presentado casi un (1) año después de haber sido dictadas, en circunstancias en que el señor Román Mártir sólo contaba con un término jurisdiccional de treinta (30) días para hacerlo.[15] No obstante, decidió acoger el asunto planteado en el recurso presentado por el recluso como una moción al amparo de la Regla 192.1 de Procedimiento Criminal, *infra*, y trasladarlo al tribunal sentenciador para que así se atendiera.[16]

Inconforme con dicha determinación, el 14 de marzo de 2005, el Procurador General acudió ante nosotros mediante recurso de *certiorari*, señalando los errores siguientes:

**I. INCIDIÓ EL TRIBUNAL DE APELACIONES, AL ASUMIR JURISDICCIÓN EN EL CASO DE AUTOS, A PESAR DE HABER EXPIRADO YA EL TÉRMINO PROVISTO EN LEY PARA RECURRIR DE LA SENTENCIA.**

**II. INCIDIÓ EL TRIBUNAL DE APELACIONES AL ACOGER EL RECURSO DE APELACION DEL RECURRIDO, CUYO TÉRMINO ESTABA PRESCRITO, COMO UNO AL AMPARO DE LA REGLA 192.1 DE PROCEDIMIENTO CRIMINAL, NO OBSTANTE NO CUMPLIR ÉSTE CON NINGUNO DE LOS FUNDAMENTOS TAXATIVOS EXIGIDOS POR DICHA REGLA.**

**III. INCIDIÓ, Y EN CONSECUENCIA ABUSÓ DE SU DISCRESIÓN, EL TRIBUNAL DE APELACIONES, AL ACOGER UN RECURSO A TODAS LUCES IMPROCEDENTE EN DERECHO. ELLO TUVO EL EFECTO DE INFRINGIR EL PRINCIPIO DE CERTEZA O SEGURIDAD JURÍDICA.**

---

[15] Íd., pág. 24.

[16] Íd., págs. 22 y 25.

Posteriormente, el 27 de abril de 2005, el Procurador General presentó ante nos una "MOCIÓN EN AUXILIO DE JURISDICCIÓN", solicitando la paralización de una vista judicial pautada por el Tribunal de Primera Instancia para el 6 de mayo de 2005, a raíz del dictamen del Tribunal de Apelaciones. El 29 de abril de 2005, expedimos el recurso de *certiorari*.

Con el beneficio de la comparecencia de ambas partes[17], nos encontramos en posición de resolver.

II

En vista de que los señalamientos de error del Procurador General están íntimamente relacionados, los discutiremos en conjunto.

El Procurador General arguye que el Tribunal de Apelaciones incidió al asumir jurisdicción sobre un "Recurso de Apelación" presentado casi un (1) año después de dictadas las sentencias condenatorias recurridas.[18]

---

[17] El convicto, señor Román Mártir, compareció por derecho propio. En el ejercicio de nuestra discreción, le concedimos término para que compareciera, además, a través de abogado de oficio. Debemos puntualizar que recientemente reiteramos la norma de que aunque un convicto indigente tiene un derecho constitucional a que se le nombre un abogado de oficio para la presentación de una primera apelación, éste no se extiende a la presentación de recursos discrecionales o ataques colaterales a una convicción. Pueblo v. Rivera Crespo, 2006 T.S.P.R. 78, 2006 J.T.S. 87, 167 D.P.R. __ (2006).

[18] Alegato del Procurador General, pág.4. Según indicamos en la relación de hechos que antecede, las sentencias de culpabilidad del aquí recurrido fueron dictadas el 31 de julio de 2003, mientras que el "Recurso de Apelación" fue presentado ante el Tribunal de Apelaciones el 20 de julio de 2004.

A

La Regla 193 de Procedimiento Criminal dispone lo siguiente:

> Las sentencias finales dictadas en casos criminales originados en el Tribunal de Primera Instancia podrán ser apeladas por el acusado en la forma prescrita por estas reglas. En estos casos el acusado podrá establecer una apelación para ante el Tribunal de Circuito de Apelaciones, **excepto en los casos de convicción por alegación de culpabilidad, en los cuales procederá únicamente un recurso de *certiorari,* en cuyo caso el auto será expedido por el Tribunal de Circuito de Apelaciones a su discreción. La solicitud de *certiorari* deberá presentarse dentro de los treinta (30) días siguientes a la fecha en que la sentencia fue dictada. Este término es jurisdiccional** (énfasis añadido).[19]

Se desprende de lo aquí citado que el término disponible para presentar un recurso de *certiorari* para revisar una sentencia condenatoria dictada por alegación de culpabilidad es de carácter fatal o jurisdiccional, **treinta (30) días,** a partir de la fecha en que la sentencia fue dictada.

No obstante, el señor Román Mártir, convicto y sentenciado por alegación de culpabilidad, presentó su "Recurso de Apelación" ante el Tribunal de Apelaciones **tres cientos cincuenta y cinco (355) días** después de dictadas las sentencias que le condenaban. Al momento de presentar el denominado "Recurso de Apelación", vencido ya el término jurisdiccional de treinta (30) días en cuestión, el Tribunal de Apelaciones carecía de autoridad para entender

---

[19] 34 L.P.R.A. Ap. II.

en el mismo.  Al así reconocerlo en su sentencia, actuó correctamente el referido foro.[20]

No obstante, a pesar de declararse sin jurisdicción en el recurso en alzada presentado por el convicto, el Tribunal de Apelaciones acogió el asunto planteado en él como una moción al amparo de la Regla 192.1 de Procedimiento Criminal, *infra*, y acto seguido, lo trasladó al Tribunal de Primera Instancia para que allí se resolviera, como una cuestión de jurisdicción original en el foro.

El Procurador General sostiene ante nos que, al así actuar, el Tribunal de Apelaciones erró, toda vez que las sentencias condenatorias atacadas por el convicto fueron dictadas como resultado de su alegación de culpabilidad. Aduce que cuando el señor Román Mártir hizo alegación de culpabilidad, renunció a los derechos constitucionales que invocó ante el tribunal intermedio apelativo.[21]  Debemos recordar que en el denominado "Recurso de Apelación" el convicto alegó que en el foro primario le fueron violentados sus derechos como acusado y su derecho constitucional a un debido proceso de ley.  Arguye, entonces, el Procurador General que, "siendo su sentencia una secuela de una

---

[20] Es menester destacar que el convicto debió designar su escrito como "Recurso de *Certiorari*".  No obstante, es norma antigua que el nombre con que se designa un recurso no es determinante de su naturaleza, ni debe ser decisivo desde el punto de vista de la función de hacer justicia, por lo que los tribunales deben hacer caso omiso de los nombres o títulos mal puestos en los recursos, y considerarlos como corresponda.  Correa Negrón v. Pueblo, 104 D.P.R. 286, 293 (1975) y casos allí citados.

[21] Alegato del Procurador General, págs. 3-4.

admisión de culpabilidad, el convicto está impedido de invocar estos derechos".[22]

En la alternativa, el Procurador General alega que el contenido del denominado "Recurso de Apelación" no cumplió con los fundamentos y exigencias del remedio contemplado por la Regla 192.1 de Procedimiento Criminal, *infra*, y que su acogida, como una moción bajo la referida regla, infringió el principio de certeza y seguridad jurídica. Veamos.

B

En Pueblo v. Figueroa García[23], citando al Tribunal Supremo federal en Brady v. United States[24], expresamos sobre el concepto de alegación de culpabilidad ("guilty plea") lo siguiente:

> ... a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so --hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial-- a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.[25]

---

[22] Íd.

[23] 129 D.P.R. 798 (1992).

[24] 397 U.S. 742, 748 (1970).

[25] Pueblo v. Figueroa García, *supra*, pág. 804.

Por otro lado, recientemente, en Pueblo v. Montero Luciano[26], reiteramos la norma jurisprudencial que establece que, al hacer alegación de culpabilidad, el acusado renuncia a valiosos derechos constitucionales, entre ellos, el derecho a que se pruebe su culpabilidad más allá de duda razonable, el derecho a un juicio justo, imparcial y público, el derecho a ser juzgado ante un juez o jurado, y el derecho a presentar evidencia a su favor y rebatir la evidencia presentada en su contra.

No obstante, hemos establecido que una sentencia dictada a raíz de una alegación de culpabilidad es revisable mediante recurso de certiorari, librado discrecionalmente, a los fines de examinar un ataque a (1) la suficiencia de la acusación, (2) la jurisdicción del tribunal sentenciador y (3) para plantear alguna irregularidad en el pronunciamiento de la sentencia.[27] Hemos expresado que el hecho de que un acusado haya sido convicto mediante una alegación de culpabilidad no impide que éste ataque directamente la validez de la alegación, cuando (4) es el resultado de coacción o (5) cuando un tribunal incumple su deber de investigar asuntos requeridos por la Constitución o por la ley. Asimismo, hemos señalado que un convicto por alegación

---

[26] 2006 T.S.P.R. 158, 2006 J.T.S. 167, 169 D.P.R. ___ (2006). Véase, además, Pueblo v. Figueroa García, supra, pág. 807. Además, también, Pueblo v. Torres Nieves, 105 D.P.R. 340, 350 (1976) y Díaz Díaz v. Alcaide, 101 D.P.R. 846, 854 (1973).

[27] Pueblo v. Santiago Agricourt, 147 D.P.R. 179, 210 (1998); Pueblo v. Pueblo Internacional, 106 D.P.R. 202, 208 (1977).

de culpabilidad puede impugnar colateralmente su sentencia (6) si no fue producto de una decisión inteligente.[28]

Aunque ciertamente hemos resuelto que al hacerse alegación de culpabilidad se renuncia a valiosos derechos constitucionales relacionados, esencialmente, con el acto del juicio, y consustanciales con el derecho constitucional a un debido proceso de ley, bajo ninguna circunstancia puede interpretarse que tal alegación implica una renuncia total a éste último. No puede ser de otra manera, pues la cláusula del debido proceso de ley, consagrada en la Sección 7 de la Carta de Derechos de la Constitución de Puerto Rico[29], ha sido denominada como la disposición matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano.[30] Dicho de otra forma, el derecho constitucional a un debido proceso de ley representa la garantía fundamental de protección que tiene un ciudadano contra los posibles abusos o usos arbitrarios de poder por parte del Estado y constituye la máxima garantía de la aspirada justicia plena e imparcial. Es responsabilidad de esta Curia proteger el derecho constitucional a un debido

---

[28] Pueblo v. Santiago Agricourt, *supra*, págs. 210-211.

[29] Art. II, sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Dispone, en lo aquí pertinente, que:

   […]Ninguna persona será privada de su libertad o
   propiedad sin debido proceso de ley…

[30] Pueblo v. Montero Luciano, *supra*; Pueblo v. Vega, 198 D.P.R. 980 (1999).

proceso de ley como una de las columnas en que se erige nuestro sistema de justicia.

Así las cosas, un ciudadano convicto mediante alegación de culpabilidad, podría atacar dicha convicción, y la sentencia dictada de conformidad, si cuenta con un **planteamiento o defensa meritoria de debido proceso de ley**. Podría hacerlo directamente, a través del recurso de *certiorari* correspondiente, o colateralmente, a través de procedimientos posteriores a la sentencia, **perfeccionados conforme a derecho**, tales como la moción bajo la Regla 192.1 de Procedimiento Criminal, *infra*, y el recurso de *habeas corpus*. **Todo planteamiento o defensa de este tipo deberá estar debidamente acreditada y fundamentada en el recurso o moción presentada. Enfatizamos que si se tratare de un ataque colateral a la sentencia, deberá conformarse estrictamente a los fundamentos, condiciones, circunstancias, planteamientos y normas de derecho que gobiernan el procedimiento, recurso, mecanismo o moción presentada a esos fines.**

En vista de lo anterior, no le asiste la razón al Procurador General cuando con sus argumentos ante nos pretende implicar que, al hacer alegación de culpabilidad, el señor Román Mártir renunció a todo planteamiento o defensa apuntalada en el derecho constitucional a un debido proceso de ley.

Ahora bien, descartada la procedencia de un ataque directo a las sentencias condenatorias en controversia

mediante recurso de *certiorari*, por ausencia de jurisdicción, debemos evaluar si el contenido del denominado "Recurso de Apelación", presentado por el convicto ante el Tribunal de Apelaciones, cumplió con la Regla 192.1 de Procedimiento Criminal, *infra*. Ello, con el objetivo de determinar si dicho foro actuó con corrección jurídica al (1) acoger el asunto planteado en él como una moción bajo la referida regla y (2) remitirlo al tribunal sentenciador para su disposición.

C

La Regla 192.1 de Procedimiento Criminal, en adelante Regla 192.1, autoriza a cualquier persona que se encuentre detenida en virtud de sentencia condenatoria, a presentar una moción en la sede del Tribunal de Primera Instancia que la dictó, con el objetivo de que sea anulada, dejada sin efecto o corregida, en circunstancias en que se alegue el derecho a ser puesto en libertad por cualquiera de los fundamentos siguientes:

> (1) La sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; o
> (2) el tribunal no tenía jurisdicción para imponer dicha sentencia; o
> (3) la sentencia impuesta excede de la pena prescrita por la ley, o
> (4) la sentencia está sujeta a ataque colateral por cualquier motivo.[31]

---

[31] 34 L.P.R.A. Ap. II.

La moción en cuestión puede ser presentada ante el tribunal sentenciador en cualquier momento, después de dictada sentencia, incluso cuando ésta haya advenido final y firme.[32] **La Regla 192.1 requiere que se incluyan en la moción todos los fundamentos que tenga el peticionario para solicitar el remedio provisto en la misma.** Sobre este particular, la referida norma procesal establece que se considerarán renunciados los fundamentos no incluidos en la moción, excepto que el tribunal, con base en un escrito subsiguiente, determine que no pudieron razonablemente presentarse en la moción original.[33]

El mecanismo procesal provisto por la Regla 192.1 puede ser utilizado para atacar colateralmente la validez o constitucionalidad de una sentencia criminal final y firme, cuando el convicto está cumpliendo prisión por razón de la misma.[34] Los fundamentos para solicitar la revisión de una sentencia bajo este mecanismo se limitan a planteamientos de derecho, por lo que no puede ser utilizado para revisar señalamientos sobre errores de hecho.[35] La culpabilidad o inocencia del convicto no es asunto susceptible de

---

[32] Íd.; D. Nevares Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 7ma ed., San Juan, Ed. Inst. Desarrollo del Derecho, 2004, §15.5, pág. 221.

[33] Regla 192.1 de Procedimiento Criminal, supra.

[34] Pueblo v. Ortiz Couvertier, 132 D.P.R. 883, 896 (1993); Correa Negrón v. Pueblo, 104 D.P.R. 286, 292 (1975).

[35] Pueblo v. Ortiz Couvertier, supra; Pueblo v. Ruiz Torres, 127 D.P.R. 612, 615 (1990). Véase, además, Nevares Muñiz, op cit, pág. 221.

plantearse bajo este procedimiento, sino la cuestión de si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo.[36]

Una moción al amparo de la Regla 192.1 procederá cuando la sentencia dictada sea contraria a la ley o viole algún precepto constitucional, haya sido dictada sin jurisdicción, exceda la pena prescrita por la ley, o cuando esté sujeta a un ataque colateral por un fundamento válido. El Tribunal de Primera Instancia podrá, discrecionalmente, dejar sin efecto la sentencia, ordenar la excarcelación del convicto y su puesta en libertad, dictar nueva sentencia o conceder un nuevo juicio, según proceda.[37]

Expuesta la normativa de derecho anterior, procedemos a aplicarla a los hechos particulares del caso de marras.

Según se desprende del denominado "Recurso de Apelación" presentado por el señor Román Mártir ante el Tribunal de Apelaciones, éste se limitó a alegar en él lo siguiente: que "se le violaron sus derechos como acusado y le fue violado el debido proceso de ley". En esa única, llana y escueta afirmación descansó el convicto para atacar su convicción y sentencia ante el foro intermedio apelativo.

---

[36] D. Rivé Rivera, Recursos Extraordinarios, 2da ed. revisada, San Juan, Ed. Programa Educación Jurídica Continua de la Facultad Derecho U.I.P.R., 1996, pág. 185.

[37] Pueblo v. Ortiz Couvertier, supra, pág. 893; Pueblo v. Ruiz Torres, supra, pág. 614. Véase, además, Rivé Rivera, op cit., pág. 181.

En una comparecencia en forma de "Moción de Absolución Perentoria" que por derecho propio radicó en nuestra Secretaría, el señor Román Mártir alegó que:

> …fue víctima del Tribunal de Justicia donde sus derechos como acusados [sic] fueron violados en una forma sin precedentes ya que este [sic] fue acusado con un coautor que el Tribunal le desestimó los cargos sin [el coautor] tener representación legal, **en un caso en donde [sic] el peticionario** [sic] **y coacusado fueron sorprendidos montándose en vehículo que había sido hurtado en Bayamón** (énfasis suplido).[38]

Adujo, además, que el Tribunal de Primera Instancia:

> …actuó con pasión, prejuicio o parcialidad en contra del peticionario [sic] y favoreciendo al coacusado el día 23 de abril de 2003, entiéndase que el coacusado tiene un pariente una [sic] tía que labora en el Tribunal de Bayamón, entiéndase que éste [coautor] sin una representación legal que [sic] fue absuelto por dicho juez.[39]

Terminó solicitando en su moción:

> …muy respetuosamente abducción [sic] perentoria en estos casos ya que el Tribunal de Primera Instancia de Bayamón incidió y en consecuencia abuso [sic] de su discreción a todas luces improcedente en derecho. Lo cual tuvo el efecto de infringir el principio de la certeza y seguridad jurídica.[40]

En una comparecencia subsiguiente, el convicto nos señaló que "fue acusado de unos delitos dónde al coacusado

---

[38] "Moción de Absolución Perentoria", presentada por el convicto en nuestra Secretaría el 12 de agosto de 2005, pág. 2.

[39] Íd.

[40] Íd.

[el] tribunal le desestimó los cargos [sic] dejando los cargos al peticionario".[41]

Las expresiones citadas no fueron hechas por el señor Román Mártir al Tribunal de Apelaciones. Pero, aun si hiciéramos abstracción de ese hecho, como hemos apreciado, representan el mejor ejemplo de aserciones inmeritorias, flacas, descarnadas y carentes de fundamento. La aseveración hecha ante el Tribunal de Apelaciones de que el foro primario le violó sus derechos como acusado y el derecho constitucional a un debido proceso de ley, sin apoyarla allí con datos y argumentos concretos, fue claramente insuficiente para justificar acoger el denominado "Recurso de Apelación" como una moción bajo la Regla 192.1. El convicto ni remotamente cumplió con las exigencias de la referida regla. Ésta le requería que incluyera todos los fundamentos que a bien tuviera para solicitar un remedio. No obstante, el señor Román Mártir no esbozó ninguno.

Coincidimos con la profesora Dora Nevares Muñiz, quien al interpretar la Regla 192.1 comenta, y así lo resolvemos, que si de su faz la moción presentada a su amparo no demuestra que el peticionario tiene derecho a algún remedio, deberá ser rechazada de plano.[42] Si es inmeritoria de su faz, lo procedente es su declaración "Sin Lugar", sin ulterior trámite. Siendo el procedimiento provisto por la

---

[41] Moción intitulada presentada en nuestra Secretaría por el señor Román Mártir el 31 de octubre de 2005, pág. 2.

[42] Nevares Muñiz, *op cit*, pág. 221.

referida regla uno de naturaleza civil, semejante al recurso de *habeas corpus*, separado e independiente del procedimiento criminal cuya sentencia se impugna, es el peticionario quien tiene el peso de la prueba para demostrar que tiene derecho al remedio solicitado.[43] Le corresponde en primera instancia al recluso, mediante la presentación de la moción, poner al tribunal en condiciones de resolver, a través de datos y argumentos de derecho concretos, que es imperiosa la celebración de una vista, para atender sus fundados planteamientos constitucionales, o de ausencia de jurisdicción, o de ilegalidad de la pena impuesta, a tenor con la concernida regla.

En el presente caso, las cuatro (4) acusaciones que pesaban contra el señor Román Mártir alegaban su condición de reincidente habitual. La implicación de ello era que de resultar culpable en juicio, se exponía a una condena de separación permanente de la sociedad, reclusión perpetua.[44] Producto de sus alegaciones de culpabilidad, preacordadas con el Ministerio Público y aceptadas por el Tribunal de Primera Instancia, se eliminaron de los pliegos acusatorios las alegaciones sobre reincidencia habitual. El señor Román Mártir se benefició claramente de ello: obtuvo una condena de sólo ocho (8) años de prisión.

---

[43] Rivé Rivera, *op cit.*, págs. 190-191.

[44] Artículo 62 del Código Penal de 1974, 33 L.P.R.A. ant. sec. 3302.

Las sentencias condenatorias dictadas demuestran que el convicto, de conformidad con la Regla 70 de Procedimiento Criminal[45], fue examinado bajo juramento por el Tribunal de Primera Instancia, luego de lo cual realizó las alegaciones de culpabilidad, voluntariamente, con conocimiento de la naturaleza de los delitos graves imputados y de las consecuencias de las mismas. Inclusive, surge de las referidas sentencias que el señor Román Mártir solicitó al tribunal que lo sentenciara en el acto. El convicto no trajo a la atención del Tribunal de Apelaciones fundamento alguno que demostrase que al dictarse las sentencias en controversia el foro primario actuó inconstitucionalmente, sin jurisdicción o excediendo la pena prescrita en la ley. Tampoco realizó un ataque colateral contra ellas por un motivo válido. Sencillamente, el señor Román Mártir no planteó ante el foro intermedio apelativo una legítima controversia de derecho que justificara la concesión de algún remedio bajo la Regla 192.1.

No podemos perder de perspectiva que el proceso de impartir justicia incluye la debida protección del **principio de finalidad de los procedimientos penales**. Por tener como objetivo lograr la revocación de convicciones y sentencias finales y firmes, la Regla 192.1 debe ser vista por los tribunales como una de naturaleza excepcional. Así, las mociones a su amparo deben ser examinadas con un gran cuidado, desplegándose en todo momento un juicioso y

---

[45] 34 L.P.R.A. Ap. II.

responsable ejercicio de discreción. Recordemos que es imperativo que los convictos de delito presenten en procedimientos apelativos todos los fundamentos que a bien tengan para atacar sus convicciones y sentencias. Nos corresponde desalentar que éstos levanten dichos fundamentos en procedimientos posteriores colaterales, máxime si, como en el presente caso, se esgrimen argumentos infundados y peregrinos. No debemos alimentar la congestión de nuestros tribunales con recursos inmeritorios de reclusos que tienen como propósito permanecer en el foro judicial atacando colateralmente sentencias no apeladas o infructuosamente apeladas, en un esfuerzo de revocar veredictos, fallos o sentencias de culpabilidad finales y firmes.

III

Por los fundamentos antes expuestos, resolvemos que erró el Tribunal de Apelaciones al acoger el denominado "Recurso de Apelación" presentado por el señor Román Mártir como una moción al amparo de la Regla 192.1 y remitirlo al Tribunal de Primera Instancia para su dilucidación.[46]

---

[46] Queremos acentuar que la competencia para resolver una moción bajo la Regla 192.1 es del tribunal sentenciador. Si el "Recurso de Apelación" del convicto hubiese cumplido con las exigencias de la moción regulada por la referida regla procesal criminal, la actuación del Tribunal de Apelaciones hubiera sido una jurídicamente correcta. Nótese que dicho foro no dilucidó la moción (el "Recurso de Apelación") sino que, en obediencia a la referida norma de competencia, lo remitió a tales fines al Tribunal de Primera Instancia.

Debió, sin más, desestimar el recurso del convicto por falta de jurisdicción.

En virtud de lo que aquí resolvemos, procede revocar la resolución del Tribunal de Apelaciones y desestimar el denominado "Recurso de Apelación" presentado por el convicto.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

        v.                    CC-2005-229

Giovanni Román Mártir

     Recurrido

SENTENCIA

San Juan, Puerto Rico, a 11 de enero de 2007.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que erró el Tribunal de Apelaciones al acoger el "Recurso de Apelación" presentado por el aquí recurrido como una moción al amparo de la Regla 192.1 y remitirlo al Tribunal de Primera Instancia para su dilucidación. Debió, sin más, desestimar el recurso del convicto por falta de jurisdicción.

En virtud de lo que aquí resolvemos, procede revocar la resolución del Tribunal de Apelaciones y desestimar el "Recurso de Apelación" presentado por el recurrido.

Se dictará Sentencia de conformidad.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Rodríguez Rodríguez concurren sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo