EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Fabián Rivera Montalvo<br><br>Peticionario | Certiorari<br><br>2020 TSPR 116<br><br>205 DPR \_\_\_\_\_ |

Número del Caso: CC-2019-281

Fecha: 29 de septiembre de 2020

Tribunal de Apelaciones:

    Panel IX

Abogado de la parte peticionaria:

    Lcdo. Jesús Miranda Díaz

Oficina del Procurador General:

    Lcdo. Pedro A. Vázquez Montijo
    Subprocurador General

    Lcda. Liza M. Delgado González
    Procuradora General Auxiliar


Materia: Derecho Procesal Penal: La Regla 192.1 no confiere discreción al tribunal para negarse a celebrar una vista evidenciaría, si de la moción presentada y del expediente del caso no surge concluyentemente que la persona no tiene derecho al remedio que confiere la Regla. Una vez cumplidos los requerimientos bajo la Regla 192.1 de Procedimiento Criminal, el Tribunal de Primera Instancia está obligado a celebrar una vista evidenciaría y no puede denegar de plano la moción presentada.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

        v.                   CC-2019-0281        *Certiorari*

Fabián Rivera Montalvo

     Peticionario

La Jueza Presidenta ORONOZ RODRIGUEZ emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 29 de septiembre de 2020.

Nos corresponde determinar si el Tribunal de Primera Instancia tiene discreción para celebrar una vista evidenciaria al amparo de la Regla 192.1 de Procedimiento Criminal, infra, cuando de la moción sometida por el peticionario y, del expediente de su caso, no surge concluyentemente la ausencia del derecho a un remedio bajo la Regla. En este caso, un confinado solicitó al tribunal que celebrara una vista para presentar evidencia de que no era procesable cuando el tribunal aceptó su alegación de culpabilidad. Alegó que lo anterior constituyó una violación a su derecho constitucional a un debido proceso de ley y que además no contó con representación legal adecuada durante el proceso penal.

Por las razones que se exponen a continuación, determinamos que el Tribunal de Primera Instancia erró al denegar de plano la moción que presentó el confinado. Adelantamos también que, una vez cumplidos los requerimientos bajo la Regla 192.1 de Procedimiento Criminal, infra, el foro primario está obligado a celebrar una vista evidenciaria.

I

Por hechos ocurridos en el 2002 y 2003, el Ministerio Público presentó el 2 y 26 de junio de 2003 varias denuncias por asesinato en primer grado, conspiración, robo, tentativa de robo, escalamiento agravado y violaciones a la Ley de Armas contra el Sr. Fabián Rivera Montalvo (peticionario).[1] El 29 de agosto de 2003 el peticionario se declaró culpable de diecinueve (19) cargos en su contra como parte de una alegación preacordada. En consecuencia, el foro primario dictó sentencia y le impuso una pena total de noventa y nueve (99) años de reclusión.[2] Como parte del acuerdo, esta se cumpliría concurrentemente con dos cargos en su contra que estaban pendientes en la Sala Superior de Mayagüez.[3]

El 20 de agosto de 2018 el peticionario presentó una *Moción solicitando nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal*, en la que adujo que no

---

[1] Específicamente, el Ministerio Público radicó cargos en la Sala Superior de Aguadilla por los delitos de asesinato en primer grado, conspiración, robo, tentativa de robo, escalamiento agravado y violaciones a los Arts. 5.04, 5.06, 5.07, y 5.15 de la Ley de Armas de Puerto Rico. Al mismo tiempo, estaba pendiente un juicio contra el peticionario en la Sala Superior de Mayagüez en el cual se le acusó de robo y violación al Art. 5.04 de la Ley de Armas de Puerto Rico.
[2] *Sentencia*, Apéndice del *certiorari*, págs. 71-89.
[3] *Minuta*, Apéndice del *certiorari*, pág. 70.

estaba mentalmente capacitado cuando se declaró culpable. Arguyó que, según su cuadro clínico al momento de acceder a la alegación preacordada, su condición mental impedía que su decisión fuera voluntaria e inteligente, según requiere el derecho constitucional a un debido proceso de ley. Acompañó un informe intitulado *Evaluación psiquiátrica forense* que realizó el Dr. Jesús Rodríguez Rodríguez (Dr. Rodríguez) el 12 de agosto de 2018.[4] Este fue uno de los psiquiatras que atendía al peticionario para la fecha en que se declaró culpable.

Según el galeno, el peticionario estuvo bajo la custodia del Departamento de Corrección y Rehabilitación durante todo el proceso penal en su contra. Enfatizó que el peticionario se encontraba "antes, durante y después del periodo de declararse culpable recibiendo tratamiento psiquiátrico" debido a "su trastorno afectivo".[5] Añadió que, entre el periodo del 14 de julio y el 12 de agosto de 2003, el peticionario fue hospitalizado en tres ocasiones en el Hospital Psiquiátrico Correccional y en la Unidad de Intensivo Psiquiátrico en la Penitenciaría Estatal.[6] Adujo además que el 30 de julio de 2003 atendió al peticionario por los síntomas siguientes: estado de ánimo deprimido, ansiedad, insomnio, conducta auto agresiva e ideación suicida, sensación de escuchar voces y desorientado en tiempo.[7] En cada una de las tres hospitalizaciones, al

---

[4] *Evaluación psiquiátrica forense*, Apéndice del *certiorari*, pág. 52.
[5] *Informe preliminar sobre capacidad mental para declararse culpable*, Apéndice del *certiorari*, pág. 64.
[6] Íd.
[7] Íd.

peticionario se le dio de alta para continuar tratamiento ambulatorio con una dosis alta de antidepresivos, antipsicóticos y ansiolíticos.[8]

En el Informe, el Dr. Rodríguez puntualizó que el peticionario ingresó en la Unidad de Intensivo Psiquiátrico el 8 de agosto de 2003. El médico que lo atendió ese día, el Dr. José Palermo, consignó en el récord médico que el peticionario "estaba desorientado en tiempo, presentaba alucinaciones y el juicio y el intelecto pobre".[9] Añadió que tenía "pobre control de sus impulsos", por lo que fue hospitalizado ese mismo día hasta el 12 de agosto.[10] Dos días después, se llevó a la Sala de Emergencia del Complejo Correccional de Guayama pues se quejó de "ansiedad, insomnio e intranquilidad".[11] El 25 de agosto de 2003 el peticionario ingresó nuevamente a la Sala de Emergencia. Esta vez lo atendió la Dra. Ramírez, psiquiatra del complejo correccional, quien lo medicó con dosis altas de antipsicóticos y ansiolíticos.[12] Según el récord médico, mientras se llevó a cabo el proceso criminal en su contra, al peticionario se le diagnosticó con: (1) depresión mayor recurrente; (2) depresión NOS; (3) desorden de ajuste con estado de ánimo mixto depresivo y ansioso; (4) simulación, y (5) personalidad antisocial, entre otros.[13]

---

[8] Íd.
[9] *Evaluación psiquiátrica forense*, supra, pág. 57.
[10] Íd.
[11] Íd.
[12] Íd., pág. 58. Específicamente, se le ordenó a tomar Zyprexa (10 mgrs. al acostarse), Ativan (2 mgrs. tres veces al día) y Desyrel (l00 mgrs. en la mañana y 200 mgrs. al acostase).
[13] Íd., pág. 61.

Basado en ese cuadro clínico, el Dr. Rodríguez concluyó que el peticionario no tenía la capacidad intelectual, cognoscitiva y emocional para tomar la decisión de declararse culpable en el momento en que lo hizo.[14] Añadió que, según su opinión profesional, "si en el momento en que se declaró culpable al [peticionario] se le hubiera sometido a un examen psiquiátrico para evaluar su Capacidad Mental, se le hubiera encontrado mentalmente incompetente para ser juzgado y para declararse culpable".[15]

En su solicitud al amparo de la Regla 192.1, 34 LPRA Ap. II, R. 192.1, el peticionario adujo que durante los casi tres meses que duró el proceso judicial en su contra su representación legal cambió en varias ocasiones sin que ninguno solicitara una evaluación al amparo de la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II. ant. sec. 240. Alegó que, en ese transcurso de tiempo, llegó a estar representado por ocho abogados de oficio distintos.[16] Asimismo, aseguró que del expediente del Departamento de Corrección y Rehabilitación se desprendía que, luego de un intento frustrado de suicidarse, el 17 de julio de 2003 el peticionario fue ingresado en el Hospital Psiquiátrico de Corrección. Adujo además que, mientras se ventilaba el caso, fue trasladado del Hospital Psiquiátrico de Corrección al tribunal sin que se cuestionara su capacidad

---

[14] *Informe preliminar sobre capacidad mental para declararse culpable*, supra, pág. 64.
[15] *Evaluación psiquiátrica forense*, supra, pág. 62.
[16] *Moción solicitando nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal*, Apéndice del *certiorari*, pág. 45.

mental ni se solicitara la paralización de las vistas del proceso criminal.[17] Finalmente, el peticionario alegó que, de haber sido evaluado oportunamente por un perito, se hubiera determinado que no tenía la capacidad mental para comprender el proceso criminal en su contra como tampoco para aceptar una alegación preacordada de culpabilidad.

El 22 de octubre de 2018 el Tribunal de Primera Instancia rechazó de plano la solicitud del peticionario.[18] Oportunamente, este presentó una moción de reconsideración. Planteó que la Regla 192.1, supra, ordena la celebración de una vista evidenciaria salvo que de los autos surja concluyentemente que el peticionario no tenía derecho a remedio alguno al amparo de la Regla.[19] Adujo que impugna la sentencia que se dictó porque violó su derecho constitucional a que su alegación de culpabilidad fuera voluntaria e inteligente y a ostentar una representación legal adecuada. Añadió que su representación legal falló al no solicitar que se evaluara si era procesable al momento de declararse culpable. Junto a la solicitud, acompañó evidencia del psiquiatra que lo atendió durante el tiempo en que enfrentó el proceso penal y sostuvo que eso debía ser suficiente para que se le concediera la oportunidad de probar sus reclamos en una vista evidenciaria, según exige la Regla 192.1, supra.

---

[17] Íd., págs. 44-45; Certiorari, pág. 3.

[18] Notificación, Apéndice del certiorari, pág. 31. El Hon. Hiram A. Cerezo de Jesús rechazó de plano la Moción el 22 de octubre de 2018. La determinación se notificó el 30 de octubre de 2018.

[19] Moción solicitando reconsideración de determinación de 30 de octubre de 2018, Apéndice del certiorari, pág. 29.

El 19 de diciembre de 2018 una jueza distinta del mismo tribunal ordenó que el Ministerio Público se expresara sobre la moción de reconsideración que presentó el peticionario.[20] No obstante, antes de que el Ministerio Público pudiera hacerlo, el juez que atendió la solicitud original rechazó de plano la moción de reconsideración. Inconforme, el peticionario recurrió mediante un recurso de *certiorari* al Tribunal de Apelaciones. En síntesis, adujo que el foro primario abusó de su discreción al negarse a celebrar la vista evidenciaria. Sostuvo que de la solicitud que presentó al amparo de la Regla 192.1, supra, y de la *Evaluación psiquiátrica forense* que acompañó surgía base suficiente para justificar la vista. El 20 de marzo de 2019 el foro intermedio denegó expedir el recurso de *certiorari*.[21] Según este, el peticionario no presentó evidencia de que el Tribunal de Primera Instancia abusó de su discreción o incurrió en error de derecho al denegar de plano su solicitud para que se celebrase una vista evidenciaria.

En desacuerdo, el peticionario presentó oportunamente ante nosotros un recurso de *certiorari*. Adujo que el Tribunal de Apelaciones se equivocó al denegar revisar la determinación del foro primario por no encontrar indicios de abuso de discreción o error manifiesto y reiteró los

---

[20] La Hon. Aixa Rosado Pietri le concedió quince (15) días al Ministerio Público para expresar su posición. Esta Orden fue notificada el 20 de diciembre de 2018. *Notificación*, Apéndice del *certiorari*, pág. 24. Del expediente no surge con exactitud la razón por la cuál el Hon. Hiram A. Cerezo de Jesús no atendió en esta ocasión la moción de reconsideración.

[21] *Resolución*, Apéndice del *certiorari*, pág. 2.

fundamentos por los que entiende que tiene derecho a que el Tribunal de Primera Instancia celebre una vista evidenciaria al amparo de la Regla 192.1, supra. Por su parte, el Procurador General sostuvo que no se opone a que se celebre la vista evidenciaria. Argumentó que, aunque su posición es que no procede la concesión de un nuevo juicio, el peticionario podrá presentar en la vista la prueba que entienda pertinente para sostener su solicitud. Por ende, dejó a nuestra discreción la decisión sobre si procede celebrar o no la vista.[22]

Aunque inicialmente denegamos el recurso, posteriormente lo expedimos en reconsideración. Recibidas las posiciones de ambas partes, resolvemos.

II

A.

Por imperativo constitucional, a ninguna persona se le privará de su propiedad o libertad sin un debido proceso de ley. Esta garantía fundamental está consagrada tanto en la Quinta y Decimocuarta Enmienda de la Constitución federal como en la Sección 7 del Artículo II de la Constitución de Puerto Rico. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Como corolario a ese derecho, un acusado de cometer un delito no puede enfrentar juicio a

---

[22] En específico, el Procurador General expresó:

> Es la posición del Estado que en este caso no procede un nuevo juicio. Sin embargo, mediante la celebración de una vista evidenciaria el peticionario deberá presentar toda la evidencia que sostenga su posición y permitirá que el Estado derrote los planteamientos de la defensa. Ante esto, dejamos este asunto, en cuanto a la celebración de una vista evidenciaria, que es lo único que plantea la parte peticionari[a], a la discreción de este Honorable Tribunal. Alegato, pág. 5.

menos que sea procesable. Godinez v. Moran, 509 US 389, 396 (1993); Pate v. Robinson, 383 US 375, 378 (1966). Por *procesabilidad* nos referimos a "la lucidez con la que un imputado de delito puede entender la naturaleza y el procedimiento criminal al que se enfrenta". Pueblo v. Pagán Medina, 178 DPR 228, 237 (2010); Ruiz Ramos v. Alcaide, 155 DPR 492, 499 (2001). Según el profesor Chiesa Aponte, "se trata de una exigencia de que el acusado pueda entender la naturaleza de los procedimientos, de forma que pueda ayudar —a su abogado y a sí mismo— a su mejor defensa". E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993, Vol. III, pág. 348. Al respecto, hemos expresado que "encausar a una persona no procesable viola el debido proceso de ley". Pueblo v. Pagán Medina, supra, pág. 238; Cooper v. Oklahoma, 517 US 348, 354 (1996); Medina v. California, 505 US 437, 453 (1992) ("the criminal trial of an incompetent defendant violates due process").

A tenor con ese mandato, delimitamos las garantías mínimas que requiere la protección constitucional. Así, en Pueblo v. Pagán Medina, supra, expresamos:

> [E]l que el imputado de delito se encuentre capaz mentalmente requiere, como mínimo, que se halle lo suficientemente "coherente como para que le pueda proveer a su abogado la información necesaria o relevante para la elaboración de su defensa" [*Incompetency to Stand Trial*, 81 Harv. L. Rev. 454, 457 (1967)]. Más allá que la capacidad de recordar y relacionar información pertinente a los hechos, "el imputado debe ser capaz de comprender el significado del juicio y entender el papel que él desempeña en el proceso". Íd., pág. 239 (citando a *Incompetency to Stand Trial*, supra, pág. 457); Dusky v.

United States, 362 US 402, 402 (1960) ("the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him'").

Igualmente, las Reglas 239 y 240 de Procedimiento Criminal codifican esta exigencia a nivel estatutario. En particular, la Regla 239 de Procedimiento Criminal, 34 LPRA Ap. II, R. 239, establece que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada". Al utilizar la frase *mentalmente incapacitada*, la Regla se refiere al concepto de procesabilidad. Pueblo v. Pagán Medina, supra, pág. 237; Pueblo v. Castillo Torres, 107 DPR 551, 555 (1978).

Por otro lado, la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240, establece el procedimiento a seguir para salvaguardar este derecho. Según el texto vigente al momento de los hechos, la Regla 240, 34 LPRA Ap. II ant. sec. 240, disponía:

> (a) Vista; peritos. En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere base razonable para creer que el acusado está mentalmente incapacitado, inmediatamente suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes.

Sobre el particular, en Pueblo v. Pagán Medina, supra, indicamos que el juez que preside la sala es responsable de "velar por que en todo momento la persona denunciada o acusada se encuentre procesable". Íd., pág.

239. Expresamos además que "la Regla 240 no s[o]lo establece un mecanismo que garantiza el debido proceso de ley constitucional a un imputado de delito, sino que hace al juez de instancia custodio de ese mecanismo, imponiéndole un deber ineludible". Íd. Esta exigencia no es exclusiva de la etapa del juicio, por lo que aplica, desde que se presenta la denuncia, a todo el proceso criminal. E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, San Juan, 2018, pág. 56. Sobre este asunto, el profesor Chiesa Aponte explica:

> El debido proceso de ley exige que tan pronto haya duda sobre la competencia del imputado para ser enjuiciado, se celebre una vista para iniciar una determinación de si el imputado está procesable [...]. El comportamiento bizarro o excéntrico del acusado durante la vista o juicio puede ser suficiente para una evaluación siquiátrica solicitada por la defensa. Pero la *base razonable* para iniciar el proceso de determinación de competencia del acusado puede ser invocada por el tribunal, fiscalía o la defensa. (Énfasis en el original) (Citas omitidas). Íd., págs. 56-57.

En otras palabras, el tribunal puede, *motu proprio*, "encontrar 'base razonable' para entender que el imputado se encuentra no procesable y suspender los procesos, incluso por encima de la objeción del propio imputado". Pueblo v. Pagán Medina, supra, pág. 239. Hemos resuelto que evaluaciones siquiátricas, tarjetas de cita y hospitalizaciones en hospitales siquiátricos son factores que constituyen base razonable para mover al juez a celebrar una vista de procesabilidad. Íd., págs. 240-241; Pueblo v. Santiago Torres, 154 DPR 291 (2001). Si al amparo de la Regla 240, supra, se determina finalmente que

el acusado no es procesable, este permanecerá bajo la jurisdicción del tribunal, quien deberá regirse por lo que dispone la Regla 241, 34 LPRA Ap. II, R. 241. Pagán Medina, supra, pág. 245; Ruiz Ramos v. Alcaide, supra, pág. 501.

B.

Nuestro ordenamiento jurídico dispone que un acusado de cometer un delito puede hacer una de dos alegaciones: culpable o no culpable. Regla 68 de Procedimiento Criminal, 34 LPRA Ap. II, R. 68; Pueblo v. Acosta Pérez, 190 DPR 823, 829 (2014). Un juez no podrá aceptar una alegación de culpabilidad sin determinar primero que se "hace voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación". Regla 70 de Procedimiento Criminal, 34 LPRA Ap. II, R. 70. Expresamos sobre el particular:

> El acto de declararse culpable es de gran trascendencia en el procedimiento criminal. El acusado mediante su alegación de culpabilidad renuncia a una seri[e] de derechos fundamentales que le garantizan la Constitución y las leyes. El Estado queda relevado de la celebración de proceso que puede ser largo y costoso. Es por eso, que el acto debe estar rodeado de todas las garantías, especialmente si se tiene en cuenta que una gran parte de las personas acusadas de delitos graves se declaran culpables. […] Es conveniente para una mejor administración de la justicia que el récord revele que al declararse culpable, el acusado lo hace libre y voluntariamente, consciente de los derechos que renuncia y las consecuencias que la alegación conlleva. Díaz Díaz v. Alcaide, 101 DPR 846, 854 (1973).

En nuestra jurisdicción se reconoce la validez de las alegaciones preacordadas de culpabilidad. Pueblo v. Mojica

Cruz, 115 DPR 569 (1969). Así, la Asamblea Legislativa codificó el procedimiento para validarlas en la Regla 72 de Procedimiento Criminal, 34 LPRA Ap. II, R. 72. Pueblo v. Acosta Pérez, supra, págs. 830-831. Sobre el particular, resolvimos que el tribunal "tiene discreción para aceptar, rechazar, modificar o permitir el retiro de una alegación preacordada". Íd., pág. 833; Pueblo v. Marrero Ramos, 125 DPR 90, 97 (1990).

No obstante, esta discreción no es absoluta. Cónsono con nuestras expresiones anteriores, previo a la aceptación de una alegación preacordada, la Regla 72, supra, exige que el tribunal evalúe si: (1) esta fue hecha con pleno conocimiento, conformidad y voluntariedad del imputado; (2) es conveniente para una sana administración de la justicia, y (3) se logró conforme a derecho y a la ética. Pueblo v. Pérez Adorno, 178 DPR 946, 957 (2014). Si no se cumplen todos los requisitos enumerados, el juez está obligado a rechazar la alegación preacordada. Íd. Igualmente, expresamos que el tribunal tampoco tendrá discreción para aceptar una alegación preacordada "cuando surge alguna duda de la culpabilidad del acusado, cuando este tiene alguna defensa meritoria o cuando se cumplen mejor los fines de la justicia sometiendo el caso a la consideración del juez o Jurado para su fallo". Pueblo v. Acosta Pérez, supra, pág. 833; Betancourt Rojas v. Tribunal Superior, 90 DPR 747, 757 (1964).

Conforme con estos principios, el tribunal tiene el deber de asegurarse de que la alegación de culpabilidad se

hizo inteligente y voluntariamente. A esos fines, la Regla 72, supra, faculta al tribunal a "requerir del fiscal y del abogado del imputado aquella información, datos y documentos que tengan en su poder y que estime necesarios, y podrá examinar al imputado y a cualquier otra persona que a su juicio sea conveniente". La exigencia de voluntariedad y conocimiento es la misma tanto para la alegación de culpabilidad como para las alegaciones preacordadas. Sobre el particular, el profesor Chiesa Aponte expresa:

> El derecho más básico del acusado que hace una alegación de culpabilidad producto de un acuerdo con fiscalía es el mismo que tiene para toda alegación de culpabilidad: ésta no es válida sino [sic] se hizo inteligentemente—con conocimiento de todos los derechos a que renuncia—y voluntariamente—sin indebida coacción por parte de las autoridades. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, pág. 526.

Asimismo, el debido proceso de ley también exige que la renuncia a los derechos constitucionales que amparan al acusado durante el proceso criminal sea voluntaria y con conocimiento. McCarthy v. United States, 394 US 459, 466 (1969); Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, pág. 542. La garantía constitucional ordena que las bases para concluir que estos requisitos se cumplieron surjan del récord. Boykin v. Alabama, 395 US 238, 243-244 (1969); Pueblo v. Mojica Cruz, supra, pág. 578. Así, en Godinez v. Moran, supra, el Tribunal Supremo federal determinó que, al amparo del debido proceso de ley, el estándar de

competencia para hacer una alegación de culpabilidad no es mayor ni más riguroso que el que se hace para determinar la procesabilidad del acusado, sino que es exactamente el mismo. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, pág. 542. Por lo tanto, un acusado que no es procesable tampoco está capacitado para declararse culpable ante el tribunal. Godinez v. Moran, supra, págs. 399, 402.

C.

Toda persona que enfrenta un procedimiento criminal en su contra tiene derecho a una representación legal adecuada. Esta es una protección fundamental que reconoce tanto la Sexta Enmienda de la Constitución federal como la Sección 11 del Artículo II de la Constitución de Puerto Rico. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. En específico, la garantía exige un mínimo de competencia, calidad y desempeño en la representación legal del imputado durante el proceso criminal. Strickland v. Washington, 466 US 668 (1984). La violación del derecho a tener la asistencia legal adecuada conlleva la revocación de la sentencia y la celebración de un nuevo juicio. Pueblo v. Fernández Simono, 140 DPR 514, 518 (1996); Pueblo v. Ríos Maldonado, 132 DPR 146, 161 (1992).

Sobre el particular, expresamos que "[l]a incompetencia enervante de la asistencia legal a que tiene el acusado ha de ser de grado extremo, causante de perjuicio sustancial, al punto que sostenga la probabilidad de que[,] de no haber incidido, el resultado

del juicio hubiera sido distinto". Pueblo v. Morales Suárez, 117 DPR 497, 500 (1986); Pueblo v. Marrero Laffosse, 95 DPR 186 (1967). Establecimos además que "[e]l criterio final para adjudicar una reclamación de falta de efectividad en la defensa debe ser si la actuación del abogado de tal modo vulneró el adecuado funcionamiento del sistema adversativo que no pueda decirse que el juicio tuvo un resultado justo". Pueblo v. Morales Suárez, supra, págs. 501-502; Strickland v. Washington, supra.

En resumen, quien alegue que se violó su derecho a una representación legal adecuada debe demostrar que: (1) el desempeño de su representación legal fue deficiente dentro de un parámetro objetivo de razonabilidad, y (2) que esa deficiencia afectó al imputado. Íd. Además, le corresponde al promovente demostrar que existe una probabilidad razonable de que, de no haber mediado esa deficiencia, el resultado hubiera sido distinto. Íd.; Pueblo v. Morales Suárez, supra.

D.

Como norma general, se permite revisar una convicción por una alegación de culpabilidad únicamente a través de un recurso de *certiorari* dirigido al Tribunal de Apelaciones dentro del término jurisdiccional de treinta días desde que se dictó la sentencia. Regla 193 de Procedimiento Criminal, 34 LPRA Ap. II, R. 193. Sin embargo, en Pueblo v. Santiago Agricourt, 147 DPR 179, 210-211 (1998), expresamos que "el hecho de que un acusado haya sido convicto mediante una alegación de culpabilidad

no impide un ataque directo a la validez de la […] sentencia de convicción dictada como resultado de la alegación de culpabilidad". Así, una "sentencia puede estar sujeta a un ataque colateral si la alegación de culpabilidad no fue efectuada inteligentemente". Pueblo v. Pérez Adorno, supra, págs. 964-965; Pueblo v. Santiago Agricourt, supra, pág. 211. Asimismo, dispusimos que puede impugnarse una convicción de esta índole al amparo de la Regla 192.1 de Procedimiento Criminal, supra, "si cuenta con un planteamiento o una defensa meritoria al amparo del debido proceso de ley". Pueblo v. Pérez Adorno, supra, pág. 965; Pueblo v. Montero Luciano, 169 DPR 36 (2006).

La Regla 192.1, supra, permite que cualquier persona detenida impugne una sentencia condenatoria en su contra —aun cuando haya advenido final y firme— al amparo de alguno de los fundamentos siguientes: (1) la sentencia fue impuesta en violación a la Constitución o a las leyes del Estado Libre Asociado de Puerto Rico o a la Constitución y las leyes de Estados Unidos; (2) el tribunal no tenía jurisdicción para imponer esa sentencia; (3) la sentencia impuesta excede la pena prescrita por la ley, o (4) la sentencia está sujeta a ataque colateral por cualquier motivo. Bajo este procedimiento, la cuestión que ha de plantearse es si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo. Pueblo v. Pérez Adorno, supra, págs. 965-966; Pueblo v. Román Mártir, 169 DPR 809, 824 (2007).

La moción al amparo de la Regla 192.1, supra, puede presentarse en cualquier momento en la sala del tribunal que impuso la sentencia. Ese tribunal deberá determinar si procede anular, dejar sin efecto o corregir la sentencia que emitió. Según la Regla, el peticionario debe incluir en la moción todos los fundamentos que entienda meritorios para recibir el remedio provisto. Íd. Aquellos fundamentos que no se incluyan en la moción se entenderán renunciados a menos que el tribunal determine que no pudieron presentarse en la moción original. Íd. El inciso (b) de la Regla 192.1, supra, dispone que el juez celebrará una vista a menos que tanto de la moción como del expediente del caso surja concluyentemente que el peticionario no tiene derecho a remedio alguno al amparo de esta Regla. Asimismo, la Regla 192.1, supra, dispone que previo a la vista "el tribunal proveerá asistencia de abogado al peticionario si no la tuviere". Esta exige además lo siguiente:

> [El tribunal] se asegurará de que el peticionario ha incluido todos los fundamentos que tenga para solicitar el remedio, fijará y admitirá fianza en los casos apropiados, establecerá las cuestiones en controversia y formulará determinaciones de hecho y conclusiones de derecho con respecto a la misma.
>
> Si el Tribunal determina que la sentencia fue dictada sin jurisdicción […], o que ha habido tal violación a los derechos constitucionales del solicitante que la hace susceptible de ser atacada colateralmente, el tribunal la anulará y dejará sin efecto y ordenará que el peticionario sea puesto en libertad, o dictará una nueva sentencia, o concederá un nuevo juicio, según proceda. Regla 192.1, supra.

Conforme la Regla 192.1, <u>supra</u>, corresponde al peticionario persuadir al tribunal, con datos y argumentos de derecho concretos, que celebrar la vista es necesario para atender sus planteamientos constitucionales. <u>Pueblo v. Román Mártir</u>, supra, págs. 826-827.

E.

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Art. 670, Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 3491. A diferencia del recurso de apelación, el tribunal superior puede expedir el auto de *certiorari* de manera discrecional. <u>Pueblo v. Díaz De León</u>, 176 DPR 913, 917-918 (2009). Sin embargo, esa discreción no es irrestricta. Así, hemos expresado que los jueces, "so pretexto de ejercer su discreción, no puede[n] olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia". <u>Negrón v. Srio. de Justicia</u>, 154 DPR 79, 91 (2001) (citando a <u>Pueblo v. Ortega Santiago</u>, 125 DPR 203, 214 (1990)). De esa forma, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, fija unos criterios para que el tribunal revisor intermedio ejerza prudentemente su discreción al decidir si atiende en los méritos el recurso.[23]

_____

[23] Según la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, los criterios son:

Asimismo, nuestro esquema probatorio otorga gran deferencia a las determinaciones de hecho, la apreciación de prueba testifical y las adjudicaciones de credibilidad que realiza el juzgador del foro primario. Por ello, como norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016); Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013).

La deferencia que se le confiere al foro primario descansa en un marco de discreción y razonabilidad. Citibank N.A. v. Cordero Badillo, 200 DPR 724, 735 (2018); Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). En ese sentido, esa discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v.

---

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

McNeil Healthcare LLC, supra, pág. 729. Así, ese juicio discrecional "no es [en] función al antojo o voluntad de uno, sin tasa ni limitación alguna". Santa Aponte v. Srio. Hacienda, 105 DPR 750, 770 (1977). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho. Citibank, N.A. v. Cordero Badillo, supra; Pueblo v. Irizarry, 156 DPR 780, 788-789 (2002).

Un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Dávila Nieves v. Meléndez Marín, supra, pág. 782. Por otro lado, un tribunal puede incurrir en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. Pueblo v. Sanders Cordero, 199 DPR 827, 841 (2018); Pueblo v. Custodio Colón, 192 DPR 567, 588-589 (2015). Por

último, un juzgador incurre en error manifiesto que justifica la intervención del tribunal apelativo cuando "la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". <u>Pueblo v. Irizarry</u>, supra, pág. 816.

### III

El Tribunal de Apelaciones concluyó que el Tribunal de Primera Instancia no incurrió en abuso de discreción o cometió un error de derecho al negarse a celebrar la vista evidenciaria que solicitó el peticionario. Por lo tanto, entendió que no debió intervenir con ese dictamen. Para determinar si el foro revisor intermedio se equivocó al tomar esta determinación, debemos evaluar si los fundamentos que el peticionario presentó ante el foro de primera instancia son meritorios a la luz de los parámetros que establece la Regla 192.1, <u>supra</u>.

### A.

Para sustentar la solicitud de nuevo juicio que presentó en el foro primario, el peticionario planteó dos fundamentos de rango constitucional y estatutario: (1) la falta de una representación legal adecuada que falló en solicitar oportunamente una evaluación de procesabilidad al amparo de la Regla 240, <u>supra</u>, y (2) la ilegalidad de una alegación preacordada de culpabilidad sin que esta fuera inteligente y voluntaria, según exige el derecho constitucional a un debido proceso de ley y la Regla 72, <u>supra</u>. Como vimos, la Regla 192.1, <u>supra</u>, permite que una persona detenida solicite el relevo de su sentencia bajo

cuatro fundamentos, entre ellos, que la sentencia se impuso en violación a la Constitución de Puerto Rico o Estados Unidos, o a las leyes federales o locales, o que la sentencia está sujeta a un ataque colateral por cualquier motivo. Según expresamos, una "sentencia puede estar sujeta a un ataque colateral si la alegación de culpabilidad no fue efectuada inteligentemente". Pueblo v. Pérez Adorno, supra, págs. 964-965.

Según la Regla 192.1, supra, una vez se presenta la solicitud fundamentada, el tribunal "señalará prontamente la vista de dicha moción". Solo podrá denegar la solicitud sin celebrar la vista cuando "la moción y los autos del caso **concluyentemente** demuestren que la persona no tiene derecho a remedio alguno". Íd. (Énfasis suplido). Nótese que la Regla no confiere discreción al tribunal para negarse a celebrar la vista, pues si de la moción y del expediente del caso no surge concluyentemente que la persona no tiene derecho al remedio que confiere la Regla, el tribunal está obligado a celebrarla.

En la moción, el peticionario alegó que mientras se ventilaba el proceso judicial en su contra no tenía la capacidad mental necesaria para comprender el proceso ni para hacer una alegación preacordada de culpabilidad de forma inteligente y voluntaria. Para ello, acompañó una evaluación clínica que realizó el psiquiatra correccional que lo atendió durante el periodo en que se celebró el proceso penal. Esta evaluación narra eventos simultáneos

con su enjuiciamiento que, de probarse, podrían demostrar la validez de su reclamo.

Además, el peticionario adujo que, de haber contado con una representación legal adecuada y atenta a su cuadro clínico, un tribunal hubiera determinado que no era procesable. Por lo tanto, de haber ocurrido esa determinación, el proceso se hubiera detenido antes de que el peticionario hiciera una alegación de culpabilidad ilegal. Cabe resaltar que el peticionario alegó en la moción que presentó al amparo de la Regla 192.1, supra, que, durante la celebración de algunas de las vistas, era conducido hacia el tribunal desde el Hospital Psiquiátrico Correccional.[24] De ser cierto, este hecho por sí solo debió alertar a la representación legal o al juez que presidió el caso sobre la necesidad de realizar una evaluación sobre su procesabilidad. Como discutimos, constituye base razonable a la luz de la Regla 240, supra, que el imputado esté admitido en un hospital psiquiátrico. Pueblo v. Pagán Medina, supra. Ciertamente, la representación legal del imputado tenía la obligación de aducir esta defensa. Sin embargo, no podemos olvidar que el juez también tiene un deber ineludible de cerciorarse de la procesabilidad del imputado si llegara a su atención indicio alguno que cuestione su competencia mental. Íd.

Por estos fundamentos, entendemos que el Tribunal de Primera Instancia cometió un error de derecho al rechazar de plano la solicitud del peticionario. No albergamos duda

---

[24] *Moción solicitando nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal*, supra, págs. 44-45.

de que la moción que presentó el peticionario cumplió con los requisitos que justifican la celebración de la vista evidenciaria al amparo de la Regla 192.1, supra, por lo que denegar su celebración contraviene el mandato de la Regla. En esta vista, el peticionario tendrá la oportunidad de presentar en detalle sus fundamentos y explicar la evidencia en la que los sustenta.

B.

Determinado que el foro primario erró al rechazar celebrar la vista evidenciaria, nos resta resolver si el Tribunal de Apelaciones incidió al denegar expedir el recurso de certiorari del peticionario. Según expresamos, los tribunales revisores no debemos sustituir el criterio del foro primario, salvo se pruebe que este último actuó con pasión, prejuicio o parcialidad, abusó de su discreción o incurrió en error manifiesto. En este caso, el Tribunal de Primera Instancia incurrió en un error de derecho al rechazar de plano la moción del peticionario y negarse a celebrar la vista evidenciaria según exige la Regla 192.1, supra. Lo anterior, pues no surge concluyentemente de la moción que presentó el peticionario que este no tiene derecho a ningún remedio bajo la Regla.

Los tribunales revisores no debemos "relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes" al amparo de la discreción que el ordenamiento jurídico nos confiere. Negrón v. Srio. de Justicia, supra, pág. 91. Cónsono con la jurisprudencia discutida y con los criterios guías que

se encuentran en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, el foro revisor intermedió debió intervenir con el dictamen del Tribunal de Primera Instancia. Por lo tanto, se cometió el error que el peticionario señaló.

IV.

Por los fundamentos anteriores, revocamos los dictámenes del Tribunal de Apelaciones y del Tribunal de Primera Instancia. Consecuentemente, ordenamos al foro primario a celebrar una vista evidenciaria al amparo de la Regla 192.1, supra, conforme con lo aquí dispuesto.


                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

       v.               CC-2019-0281       *Certiorari*

Fabián Rivera Montalvo

     Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 29 de septiembre de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos los dictámenes del Tribunal de Apelaciones y del Tribunal de Primera Instancia. Consecuentemente, ordenamos al foro primario a celebrar una vista evidenciaria al amparo de la Regla 192.1, supra, conforme con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disintió y hace constar la expresión siguiente, a la que se le unieron los Jueces Asociados señores Rivera García y Feliberti Cintrón:

> Disiento de la Opinión emitida por una Mayoría de este Tribunal. La Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, es clara al establecer cuándo puede prescindirse de una vista evidenciaria. Del mismo modo, hace cuarenta y siete (47) años este Foro reconoció en *Camareno Maldonado v. Tribunal Superior*, 101 DPR 552, 562 (1973), que la Regla 192.1 dispensa el cumplimiento de la celebración de una vista para atender una moción a su amparo si la moción y los autos

del caso concluyentemente demuestran que la persona no tiene derecho a remedio alguno. El procedimiento provisto en esta Regla es de naturaleza civil y el peticionario es quien tiene el peso de convencer al Tribunal que sus planteamientos son merecedores de una vista evidenciaria. En este caso había dos (2) presunciones que el peticionario no logró refutar en su moción: (1) la fuerte presunción de que la conducta del abogado defensor está comprendida dentro del amplio ámbito de una razonable asistencia legal, y (2) la presunción de corrección que cobija los procedimientos y determinaciones judiciales.

El peticionario adujo en su solicitud que la depresión, ansiedad e insomnio que padecía al momento de declararse culpable era tal que requería se iniciara el proceso establecido por la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II. En ningún momento planteó que su historial médico fuera desconocido o ignorado totalmente por el Tribunal. La Regla 240 de Procedimiento Criminal le concede inicialmente al tribunal sentenciador total discreción en la determinación de si existe o no base razonable para creer que el acusado está mentalmente incapacitado. Aunque las evaluaciones y hospitalizaciones psiquiátricas pudieran brindar base razonable para que un tribunal inicie un proceso bajo la Regla 240, el análisis que realiza el Tribunal de Primera Instancia se hace de acuerdo con las circunstancias y los padecimientos específicos del acusado, por lo que la determinación variará de caso a caso. Es decir, una hospitalización psiquiátrica, por sí sola, no necesariamente requerirá el inicio de un proceso bajo la Regla 240. No toda alteración emocional amerita activar esta Regla, sino solo aquella que sea indicativa de que el acusado está impedido de entender el proceso en su contra y de asistir a su abogado en la preparación de la defensa. En el caso ante nos, ni la Defensa, ni el Ministerio Público ni el propio Juez de instancia sintieron la necesidad de solicitar u ordenar, respectivamente, un proceso bajo la mencionada Regla. La totalidad del expediente apoya la determinación de que el foro sentenciador valoró que no había base razonable para iniciar el proceso provisto por la Regla 240.

Notablemente la Minuta de la Vista del Juicio indica que, luego de "[e]xaminada la alegación de forma verbal como escrita[,] el Tribunal así la acept[ó] por ser libre, voluntaria, e inteligente[], sin coacción alguna [...]". Asimismo, las Sentencias dictadas en contra del peticionario expresan lo siguiente: "Habiéndose dado lectura a la acusación y preguntado por el Tribunal qu[é] alegación hacía, el acusado manifestó que se declaraba culpable del delito [...]. El Tribunal aceptó la alegación de culpabilidad, luego de determinar que la misma se hizo voluntariamente con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación". En virtud de la presunción de corrección de las determinaciones judiciales, debemos presumir que el tribunal dio cumplimiento a su obligación de informar al acusado las consecuencias de la alegación de culpabilidad y se aseguró que la renuncia se hizo con conocimiento y voluntariamente. 34 LPRA Ap. II, R. 70. En *Godinez v. Moran*, 509 US 389 (1993), caso citado por la Opinión Mayoritaria, el Tribunal Supremo de Estados Unidos aclaró que el estándar de capacidad para determinar si el acusado es procesable es igual al utilizado para determinar si el acusado puede someter una alegación de culpabilidad. Sin embargo, el Tribunal Supremo federal hizo hincapié en que para aceptar una alegación de culpabilidad no basta con determinar que el acusado es competente. El foro sentenciador tendrá también que convencerse que la alegación de culpabilidad se hace con conocimiento y voluntariamente. ("The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the **ability to understand** the proceedings. [...] The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant **actually does understand** the significance and consequences of a particular decision and whether the decision is uncoerced"). (Énfasis suplido). *Íd.*, págs. 400-401 n. 12. Por ende, la indagación que hace el juez al aceptar la alegación de culpabilidad requiere, no tan solo que el juez evalúe si el acusado es capaz, sino que requiere además que este conozca el derecho que renuncia. Por lo tanto, partiendo de la

presunción no rebatida de que el Juez descargó su responsabilidad de asegurarse de que el peticionario aceptó el acuerdo voluntaria e inteligentemente, según se desprende de los autos, difícilmente se podría concluir que el Juez no se aseguró de que era capaz de entender el proceso.

Finalmente, pesa en mi ánimo el hecho de que el peticionario impugnó su alegación de culpabilidad **quince (15) años** después de haberse declarado culpable. La Regla 192.1 es excepcional y "*no* constituye 'carta blanca' para aquellos convictos que, habiendo en su momento decidido, en forma informada, inteligente y voluntaria, no apelar de las sentencias que le fueron impuestas, se han 'arrepentido' de dicha decisión y ahora pretendan apelar de las mismas". *Pueblo v. Ortiz Couvertier*, 132 DPR 883, 896 n. 15. No podemos perder de perspectiva que el proceso de impartir justicia incluye la debida protección del principio de finalidad de los procedimientos penales. *Pueblo v. Román Martir*, 169 DPR 809, 827 (2007). Siendo el estándar de adjudicación aplicable a la controversia el de abuso de discreción, estimo que los foros *a quo* no incurrieron en tal abuso al denegar de su faz la moción presentada por el peticionario.

El Juez Asociado señor Rivera García emitió una opinión disidente a la que se le unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Fabián Rivera Montalvo<br><br>Peticionario | | CC-2019-0281 |

**Opinión Disidente emitida por el Juez Asociado señor RIVERA GARCÍA, a la cual se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón.**

En San Juan, Puerto Rico, a 29 de septiembre de 2020.

Discrepo del curso decisorio tomado por este Tribunal al revisar los dictámenes de los foros inferiores, que versaban sobre una moción al amparo de la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, presentada por el Sr. Fabián Rivera Montalvo (peticionario o señor Rivera Montalvo), quien, luego de haber sido sentenciado hace más de quince años reclamó un nuevo juicio. En virtud de los parámetros que establece la Regla 192.1 de Procedimiento Criminal, *supra*, surge diáfanamente del expediente del caso que no tiene derecho al remedio peticionado al amparo de esta regla. Por lo tanto, ante la inexistencia de hechos que hicieran acreedor al señor Rivera Montalvo de un remedio, especialmente a un nuevo juicio, no procedía la celebración de una vista evidenciaria para auscultar lo que

evidentemente es improcedente.[25] En consecuencia, el Tribunal de Primera Instancia actuó correctamente al denegar la moción que presentó el peticionario.

Así pues, me parece desacertada la postura de una Mayoría de los miembros de este Tribunal de reducir a nada la discreción de los jueces y juezas de instancia al momento de decidir si procede la celebración de una vista cuando se solicite un nuevo juicio al amparo de la Regla 192.1, *supra*. El efecto práctico de la decisión que emite este Tribunal es el de obligar a los tribunales a celebrar vistas evidenciarias en la totalidad de los casos en que se plantee la invalidez de una declaración de culpabilidad al amparo de la Regla 192.1 de Procedimiento Criminal. Sin duda, no puedo avalar ese raciocinio.

A continuación, presento un resumen de los hechos materiales con el fin de contextualizar en detalle mi postura en este caso.

**I**

El 29 de agosto de 2003, el señor Rivera Montalvo hizo alegación de culpabilidad por veinte cargos por la comisión de los delitos de asesinato en primer grado, conspiración, robo, tentativa de robo, escalamiento agravado e infracción a los Artículos 5.04, 5.06, 5.07 y

---

[25] La Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, dispone en su inciso (b) que **dispensa del cumplimiento de la celebración de la vista si la moción y los autos del caso concluyentemente demuestran que la persona no tiene derecho a remedio alguno.** *Camareno Maldonado v. Tribunal Superior*, 101 DPR 552, 562 (1973).

5.15 de la Ley de Armas de Puerto Rico, que fueron consumados en fechas distintas.

El Tribunal de Primera Instancia emitió un fallo de culpabilidad, luego de que el señor Rivera Montalvo dialogó con los dos abogados que lo representaban e informaron que deseaba renunciar a su derecho a un juicio ante un Jurado. En específico, durante la celebración de la vista del juicio en su fondo, el juez sentenciador examinó que la renuncia del peticionario se hizo conforme a derecho, así como libre, voluntaria y consciente de la naturaleza del delito y las consecuencias que conllevaba la renuncia a este derecho. Asimismo, examinó que la alegación de culpabilidad se hizo tanto verbal como escrita y que fue libre, voluntaria e inteligentemente, sin coacción alguna.[26] Como parte del acuerdo, las penas impuestas se cumplirían de forma concurrente, junto a varios cargos que se presentarían en su contra por otros delitos cometidos en Mayagüez.

---

[26] En lo pertinente, en *Díaz Díaz v. Alcaide*, 101 DPR 846, 854 (1973), expresamos lo siguiente:

"**El acto de declararse culpable es de gran trascendencia en el procedimiento criminal.** El acusado mediante su alegación de culpabilidad renuncia a una seri[e] de derechos fundamentales que le garantizan la Constitución y las leyes. El Estado queda relevado de la celebración de proceso que puede ser largo y costoso. Es por eso, que el acto debe estar rodeado de todas las garantías, especialmente si se tiene en cuenta que una gran parte de las personas acusadas de delitos graves se declaran culpables. […] **Es conveniente para una mejor administración de la justicia que el récord revele que al declararse culpable, el acusado lo hace libre y voluntariamente, consciente de los derechos que renuncia y las consecuencias que la alegación conlleva**".

No obstante, aproximadamente **quince años después** de haber advenido final y firme la sentencia, el peticionario presentó una *Moción solicitando nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal* ante el Tribunal de Primera Instancia. Alegó que cuando hizo la alegación de culpabilidad no tomó una decisión voluntaria e inteligente al renunciar a su derecho constitucional a tener un juicio. Ello, debido a que sufría un desorden emocional de tipo afectivo en el momento en que hizo la alegación de culpabilidad. En su solicitud, arguyó que durante el proceso judicial en su contra estuvo representado por varios abogados y que ninguno solicitó una evaluación de incapacidad mental al amparo de la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II. Además, puntualizó que una amiga le sugirió que localizara al Dr. Jesús Rodríguez Rodríguez, psiquiatra forense del Hospital Psiquiátrico Correccional, quien lo atendió por varios episodios de ansiedad, insomnio y depresión durante su proceso judicial, para que evaluara su caso. Adujo que encontró al galeno a través de un investigador privado. Entonces, el doctor Rodríguez Rodríguez aceptó examinar el expediente médico y realizarle una entrevista. Posteriormente, el facultativo le entregó una *Evaluación Psiquiátrica Forense* en la que determinó que "si se le hubiera sometido a un examen psiquiátrico se le hubiera

encontrado que estaba mentalmente incompetente para ser juzgado y hacer alegación de culpabilidad".[27]

El 22 de octubre de 2018, el Tribunal de Primera Instancia denegó el referido petitorio.

Inconforme con este proceder, el señor Rivera Montalvo presentó, sin éxito, una moción de reconsideración.[28] En desacuerdo aún, presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones. En este alegó que el Tribunal de Primera Instancia abusó de su discreción al denegar la moción al amparo de la Regla 192.1 de Procedimiento Criminal, *supra*, sin celebrar una vista evidenciaria para adjudicar los méritos de su petición.[29]

El 20 de marzo de 2019 el foro apelativo intermedio emitió una Sentencia en la que denegó expedir el recurso. Concluyó que el peticionario no presentó argumentos ni evidencia que demostraran que el foro de primera instancia hubiera abusado de su discreción o cometido un error de derecho al denegar la moción de nuevo juicio. De esta

---

[27] *Moción solicitando nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal*, Apéndice de la petición de certiorari, págs. 32-46.

[28] Surge de la boleta de notificación, que el 20 de diciembre de 2018 la Hon. Aixa Rosado Pietri, Jueza Superior que atendió la moción de reconsideración que presentó el peticionario, concedió quince días al Ministerio Público para que se expresara sobre la solicitud del señor Rivera Montalvo. Se desconocen las razones por las cuales el Hon. Hiram A. Cerezo De Jesús, Juez Superior de la Sala Judicial de Aguadilla, quien presidió el proceso contra el peticionario, no estuvo disponible para atender la solicitud de reconsideración que presentó el peticionario. No obstante, posteriormente el juez Cerezo de Jesús denegó la moción de reconsideración del señor Rivera Montalvo.

[29] Apéndice de la Petición de *Certiorari*, págs. 6-18.

manera, determinó que no intervendría con el dictamen recurrido, en ausencia de una demostración clara de que ese foro hubiera actuado de forma arbitraria o caprichosa, abusado de su discreción, o se hubiera equivocado en la interpretación o aplicación de una norma de derecho.

En desacuerdo con este dictamen, el señor Rivera Montalvo presentó ante nos un recurso de *certiorari* en el que señaló el error siguiente:

> ERRÓ EL TRIBUNAL DE APELACIONES AL DENEGAR DE PLANO EL RECURSO DE *CERTIORARI* SIN ENTRAR EN LOS MÉRITOS A PESAR DE QUE EL TRIBUNAL DE PRIMERA INSTANCIA ABUSÓ DE SU DISCRECIÓN AL NO SEÑALAR UNA VISTA EVIDENCIARIA CONFORME A LA REGLA 192.1 DE PROCEDIMIENTO CRIMINAL.

En síntesis, expresó que el Tribunal de Apelaciones se equivocó al no revisar la determinación del foro de primera instancia. Nuevamente, reiteró los fundamentos por los cuales considera que tiene derecho a que el Tribunal de Primera Instancia celebre una vista evidenciaria al amparo de la Regla 192.1 de Procedimiento Criminal. Por su parte, el Procurador General compareció mediante *Alegato del Pueblo de Puerto Rico*. Sostuvo que su posición es que no procede la solicitud de nuevo juicio. Sin embargo, dejó ante la discreción de este Tribunal la decisión sobre si procede que se celebre una vista evidenciaria para que el peticionario presente evidencia que sostenga su posición.

Con el cuadro fáctico discutido, procedemos a exponer los fundamentos que sostienen nuestra posición.

II

**A. La moción al amparo de la Regla 192.1 de Procedimiento Criminal**

La Regla 192.1 de Procedimiento Criminal, *supra*, autoriza a cualquier persona que se encuentre detenida y que alegue que tiene derecho a ser puesta en libertad a presentar una moción en el Tribunal de Primera Instancia que dictó la sentencia condenatoria para que sea corregida, dejada sin efecto o anulada.[30] Ello, cuando se

---

[30] 34 LPRA Ap. II. La Regla 192.1 de Procedimiento Criminal instituye un remedio post-condena idéntico al dispuesto en 28 USC sec. 2255. D. Rivé Rivera, *Recursos Extraordinarios*, 2da Ed., San Juan, Ed. UIPR, 1996, pág. 183. Su homóloga federal dispone lo siguiente:

> "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> **Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief**, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
>
> A court may entertain and determine such motion without requiring the production of the prisoner at the hearing." (Énfasis suplido). 28 USC sec. 2255.

alegue que es contraria a la ley o viola algún precepto constitucional, fue dictada sin jurisdicción, excede la pena prescrita por la ley, o cuando esté sujeta a un ataque colateral por un fundamento válido.[31] En consecuencia, este recurso está disponible únicamente cuando la sentencia adolece de un defecto fundamental que conlleva inevitablemente una violación al debido proceso de ley.[32] Por ello, salvo circunstancias extraordinarias, no se concede en sustitución del recurso ordinario de apelación.[33] Esto es, la regla citada es una de **naturaleza excepcional** que le permite al convicto revisar la sentencia en cualquier momento posterior, aun si la sentencia es final y firme.

Cónsono con lo anterior, al interpretar esta norma hemos señalado que "los fundamentos para revisar una sentencia mediante este mecanismo se limitan a cuestiones de derecho, por lo que el precepto no puede ser empleado para argumentar cuestiones de hechos que hubieren sido adjudicadas por el tribunal".[34] Es decir, entre otras cosas, esta regla provee remedios para atender errores de derecho perpetrados durante el proceso penal. Se trata de

---

[31] Véase, además, *Pueblo v. Pérez Adorno*, 178 DPR 946, 964-965 (2010); *Pueblo v. Ortiz Couvertier*, 132 DPR 883, 893-894 (1993).

[32] *Pueblo v. Pérez Adorno, supra*, págs. 965-966.

[33] *Pueblo v. Pérez Adorno, supra*, pág. 966, citando a *Otero Fernández v. Alguacil*, 116 DPR 733 (1985). Véase, además, D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Ed. U.I.A., 1996, págs. 181-184.

[34] *Pueblo v. Pérez Adorno, supra*, págs. 966-967; *Pueblo v. Ruiz Torres*, 127 DPR 612, 615-616 (1990) (Sentencia); *Pueblo v. Román Mártir*, 169 DPR 809, 824 (2007).

un mecanismo para cuestionar la legalidad de la sentencia, no su corrección, a la luz de los hechos.[35] En esencia, "la cuestión que ha de plantearse es si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo".[36]

La Regla 192.1 de Procedimiento Criminal, *supra*, requiere que en la moción se incluyan todos los fundamentos que tenga el peticionario para solicitar el remedio o, por el contrario, se entienden renunciados.[37] Además, cabe resaltar que **el procedimiento establecido en la Regla 192.1, *supra*, es de naturaleza civil y, por lo tanto, el peticionario tiene el peso de la prueba para demostrar que tiene derecho al remedio solicitado.**[38]

Por otro lado, la Regla 192.1 de Procedimiento Criminal, *supra*, precisa que el tribunal ante el cual se presenta una moción por una persona condenada criminalmente que alega su derecho a ser puesto en libertad, ordene que se notifique copia de la moción al Ministerio Público y celebre una vista para disponer de la moción. No obstante, el inciso (b) de la Regla 192.1 de Procedimiento Criminal, *supra*, **establece que el cumplimiento de esa norma sobre la celebración de la vista**

---

[35] *Pueblo v. Pérez Adorno*, *supra*, págs. 966-967, citando a *Pueblo v. Marcano Parrilla*, 152 DPR 557 (2000).

[36] *Pueblo v. Pérez Adorno*, *supra*, págs. 965-966.

[37] *Pueblo v. Román Mártir*, *supra*, pág. 824.

[38] Íd., pág. 826; *Pueblo v. Rivera Crespo*, 167 DPR 812, 820-821 (2006).

será inaplicable si "la moción y los autos del caso concluyentemente demuestran que la persona no tiene derecho a remedio alguno". (Énfasis suplido).[39]

Conforme a ello, corresponde al peticionario persuadir al tribunal con datos y argumentos de derecho concretos sobre los méritos de sus planteamientos para que la vista sea necesaria.[40] En consecuencia, si el tribunal sentenciador concluye que el peticionario no tiene derecho a un remedio puede rechazarla sin la previa celebración de una vista.[41]

### B. La alegación de culpabilidad y las alegaciones preacordadas

El acto de declararse culpable es de gran trascendencia en el procedimiento criminal, ya que mediante la alegación de culpabilidad el acusado renuncia a gran parte de los derechos fundamentales que le cobijan

---

[39] *Camareno Maldonado v. Tribunal Superior*, *supra*, pág. 962.

[40] *Pueblo v. Román Mártir*, *supra*, págs. 826-827.

[41] El historial legislativo de la Regla 192.1 de Procedimiento Criminal revela que mediante esta disposición se pretendió que los tribunales federales tuvieran un cuadro claro sobre los fundamentos aducidos para atacar la sentencia, ello, cuando se impugnara la validez de las sentencias criminales dictadas por los tribunales de Puerto Rico. A través de un modelo de moción, por medio del cual el recluso vertía en llena blancos toda la información relacionada a su caso, se dio mayor oportunidad a este tener a su alcance un mecanismo práctico y conveniente para solicitar este remedio post sentencia sin mayores inconvenientes. Al mismo tiempo, de notificarse la moción y concederse la vista, se propició el que los tribunales pudieran considerar y resolverla sin la presencia del solicitante. Véase P. del S. 663 de 2 de junio de 1967, 3ra Sesión Ordinaria, 5ta Asamblea Legislativa, págs. 338-340; P. del S. 663 de 28 de abril de 1967, Informe de la Comisión de los Jurídico Penal, Diario de Sesiones de la Asamblea Legislativa, págs. 889-891 (1967).

bajo la Constitución y las leyes.[42] A tales efectos, para garantizar el debido proceso de ley consagrado en la Quinta y Decimocuarta Enmienda de la Constitución federal como en la Sección 7 del Artículo II de la Constitución de Puerto Rico, a un acusado de delito no se le puede encausar a menos que este pueda entender la naturaleza y el procedimiento criminal al que se enfrenta.[43] Ante ello, el juez o la jueza que preside la sala debe "velar por que en todo momento la persona denunciada o acusada se encuentre procesable".[44] Cabe aclarar que la procesabilidad del imputado se refiere a la capacidad o incapacidad mental de la persona al momento de encarar el proceso judicial en su contra.[45]

La Regla 240 del Procedimiento Criminal, *supra*, vigente al momento de llevarse a cabo el proceso criminal contra el peticionario, disponía que "en cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere **base razonable para creer** que el acusado está mentalmente incapacitado, inmediatamente suspenderá los procedimientos y señalará una vista para determinar el estado mental del

---

[42] *Pueblo v. Suárez*, 163 DPR 460, 469 (2004); *Pueblo v. Santiago Agricourt*, 147 DPR 179, 192-193 (1998); *Díaz Díaz v. Alcaide*, 101 DPR 846, 854 (1973).

[43] *Pueblo v. Pagán Medina*, 178 DPR 228, 237 (2010).

[44] Íd., págs. 238-239.

[45] *Pueblo v. Castillo Torres*, 107 DPR 551, 555 (1978). Véase, además, *Pueblo v. Santiago Torres*, 154 DPR 291, 300 (2001).

acusado". (Énfasis suplido).[46] Nótese que la disposición concede **discreción** al juez sentenciador en la determinación de si existe o no base razonable para creer que el acusado esta mentalmente incapacitado. La regla

---

[46] 34 LPRA Ap. II, ant. sec. 240. Originalmente, la Regla 240 de Procedimiento Criminal establecía que el tribunal tenía discreción para suspender los procedimientos si existía base razonable para creer que la persona acusada de delito estaba incapacitada mentalmente. Sin embargo, la Ley Núm. 281-2011 enmendó la Regla y sustituyó el lenguaje relacionado a la determinación inicial del juez según la "base razonable para creer" por evidencia sustentada en "preponderancia de la prueba". De manera que la Regla 240 de Procedimiento Criminal, *supra*, previo a la enmienda introducida por la Ley Núm. 281-2011, disponía que

> "[e]n cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere base razonable para creer que el acusado está mentalmente incapacitado, inmediatamente suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes". Íd.

La regla actual lee como sigue:

> "(a) Vista; peritos. En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere evidencia, además de la opinión del representante legal del imputado o acusado, que estableciere mediante preponderancia de la prueba que el acusado está mentalmente incapacitado, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado. Una vez se señale esta vista, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental y/o funcional. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista de que se trate". 34 LPRA Ap. II (Supl. 2020).

establece que si el acusado no es procesable permanecerá bajo la jurisdicción del tribunal, quien deberá regirse por lo que dispone la Regla 241 de Procedimiento Criminal, *supra*.[47] De lo contrario, el proceso judicial continúa.

Por otro lado, nuestro estado de derecho procesal penal dispone que un acusado de delito puede hacer una alegación de culpabilidad o de no culpable.[48] Una alegación de culpabilidad puede derivarse de una negociación entre la representación legal de la persona acusada y el Ministerio Público. El resultado de esa negociación se conoce como "alegación preacordada".

Las alegaciones preacordadas consisten en el acuerdo alcanzado entre las partes y se produce cuando la persona imputada de delito se declara culpable a cambio de unos beneficios que el Estado le concede.[49] En este tipo de acuerdo, el Ministerio Público se compromete a cumplir con ciertas acciones, a saber: (1) solicitar el archivo de otros cargos pendientes que pesen sobre la persona acusada; (2) eliminar la alegación de reincidencia; (3) recomendar una sentencia particular o no oponerse a la solicitud de la defensa en cuanto a una sentencia específica, o (4) acordar que determinada sentencia

---

[47] Íd. Véase, además, *Pueblo v. Pagán Medina*, *supra*, pág. 245.

[48] Véanse: Regla 68 de Procedimiento Criminal, 34 LPRA Ap. II; *Pueblo v. Acosta Pérez*, 190 DPR 823, 829 (2014).

[49] *Pueblo v. Santiago Agricourt*, *supra*, pág. 194, citando a *Pueblo v. Mojica Cruz*, 115 DPR 569 (1984).

dispone adecuadamente del caso.[50] Al momento de efectuar el acuerdo el Ministerio Público debe cerciorarse de que procede en derecho.[51]

De otra parte, durante el proceso de negociación, el asesoramiento que el representante legal brinda al acusado es fundamental, ya que los abogados y las abogadas de defensa "constituyen el ente asesor principal del acusado. En esencia, informan a su cliente de la acusación que pende en su contra, de todas las consecuencias legales y penalidades a que está expuesto y de las alternativas que tiene en el caso".[52] De esa manera, se espera que sean los máximos custodios de las garantías procesales, por lo que "deben velar por los mejores intereses de su cliente y perseguir el acuerdo más idóneo, 'dentro de todas las posibilidades legales a su alcance'".[53]

El juez de instancia no participa del proceso de negociación. Si el fiscal y la persona imputada ─representada por su abogado─ logran un acuerdo a cambio de una alegación de culpabilidad, su función se circunscribe a aceptar o rechazar el acuerdo, o aplazar su decisión, según lo estatuye la Regla 72 de Procedimiento

---

[50] Regla 72(1) de Procedimiento Criminal, 34 LPRA Ap. II. Véase, además, *Pueblo v. Acosta Pérez, supra*, págs. 829-831; *Pueblo v. Marrero Ramos, Rivera López*, 125 DPR 90, 95-96 (1990).

[51] *Pueblo v. Santiago Agricourt, supra*, pág. 196.

[52] J.O. Sepúlveda Rodríguez, *Alegaciones de culpabilidad por preacuerdos: Una especie de procedimiento abreviado*, en *Compendio sobre el sistema acusatorio: Experiencias compartidas*, San Juan, Publicaciones Gaviotas, 2019, pág. 146.

[53] Íd.

Criminal, *supra*. Así pues, el tribunal "tiene discreción para aceptar, rechazar, modificar o permitir el retiro de una alegación preacordada".[54]

Un juez no puede aceptar una alegación de culpabilidad sin determinar primero que esta se "**hace voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación**". (Énfasis suplido).[55] Por lo tanto, "al decidir sobre la aceptación de una alegación preacordada el tribunal deberá cerciorarse de que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado; que es conveniente a una sana administración de la justicia y que ha sido lograda conforme a derecho y a la ética".[56] Se trata de salvaguardar que la persona imputada de delito esté informada, en forma apropiada, de los derechos que le cobijan y de todas las consecuencias y repercusiones legales a las que está expuesto con su alegación.

En ese sentido, en el momento en que el juez acepta una alegación de culpabilidad se aseguró de que tuvo ante si hechos suficientes para cerciorarse que el imputado de delito aceptó su culpabilidad voluntariamente, con conocimiento de la naturaleza del delito imputado y las consecuencias de dicha alegación. Además, se presume que

---

[54] *Pueblo v. Acosta Pérez*, *supra*, pág. 833.

[55] Véase Regla 70 de Procedimiento Criminal, 34 LPRA Ap. II.

[56] Regla 72(7) de Procedimiento Criminal, *supra*.

se hizo conforme a derecho y los preceptos éticos de la profesión, y que conviene a la sana administración de la justicia. Para ello, la Regla 72 de Procedimiento Criminal, *supra*, faculta al tribunal a "requerir del fiscal y del abogado del imputado aquella información, datos y documentos que tengan en su poder y que estime necesarios, y p[uede] examinar al imputado y a cualquier otra persona que a su juicio sea conveniente".

Por último, si el juez decide rechazar la alegación preacordada, tiene el deber de advertirle al imputado que "el tribunal no está obligado por el acuerdo y brindará al imputado la oportunidad de retirar su alegación".[57] A su vez, le informará que "si persiste en su alegación de culpabilidad, la determinación final del caso podrá serle menos favorable que la acordada entre su abogado y el fiscal".[58] Según surge de la Regla 72, *supra,* este trámite se hace constar en el expediente del caso.[59]

## III

De los hechos y del recuento procesal reseñado se colige que el señor Rivera Montalvo se declaró culpable de veinte cargos por la comisión de los delitos de asesinato en primer grado, conspiración, robo, tentativa de robo, escalamiento agravado, sustancias controladas e infracción a los Artículos 5.04, 5.06, 5.07 y 5.15 de la Ley de Armas

---

[57] Íd., inciso (4).

[58] Íd. Véase, además, *Pueblo v. Marrero Ramos*, *Rivera López*, *supra*.

[59] Regla 72(4) de Procedimiento Criminal, *supra*.

de Puerto Rico, cometidos en fechas distintas durante el 2003. En cuanto a las penas impuestas en los cargos, las partes acordaron que se cumplirían de forma concurrente con otros casos pendientes que tenía desde el 2002 en el Distrito de Mayagüez.

Durante el proceso de negociación, el Ministerio Público se comprometió a eliminar la alegación de reincidencia y, además, archivar otros cargos que el señor Rivera Montalvo tenía pendientes. Ello, según dijimos, debido a que los delitos por los que fue acusado se cometieron en fechas distintas. Así las cosas, luego de reunirse con sus abogados y con el fiscal, el peticionario logró un acuerdo para declararse culpable por los veinte cargos. De conformidad con las negociaciones, a cambio de lo anterior, recibió el beneficio de que se eliminaran de los pliegos acusatorios las alegaciones sobre reincidencia habitual y, además, la pena que acarreaba una posible sentencia por otros delitos cometidos y que se encontraban pendientes. Destacamos que durante las distintas instancias en las que se enfrentó al sistema judicial, el señor Rivera Montalvo estuvo representado por varios abogados.

No obstante, **quince años después** de haber advenido final y firme la sentencia, aduce que lo convencieron para que contactara al doctor Rodríguez Rodríguez para que evaluara su caso y emitiera un informe que revalidara su argumento de que no se encontraba competente para hacer

una alegación de culpabilidad en aquel momento. En virtud de la opinión pericial, el médico concluyó que "si en el momento en [el] que se declaró culpable se le hubiera sometido a un examen psiquiátrico para evaluar su [c]apacidad [m]ental, se le hubiera encontrado mentalmente incompetente para ser juzgado y para declararse culpable". Así, el peticionario solicitó un nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal, *supra*. Arguyó que no contó con representación legal adecuada porque tuvo hasta ocho abogados y ninguno solicitó una evaluación de incapacidad mental al amparo de la Regla 240 de Procedimiento Criminal, *supra*.

Una Mayoría de este Tribunal, de manera errada, acoge la teoría del señor Rivera Montalvo y concluye que el Juez del foro sentenciador cometió un error de derecho al rechazar la solicitud del peticionario. Fundamentan su conclusión al determinar que el señor Rivera Montalvo cumplió con los requisitos que justifican la celebración de la vista evidenciaria al amparo de la referida Regla 192.1, *supra*. Para arribar a esa determinación, entienden que el juez de primera instancia contaba con base razonable para creer que el señor Rivera Montalvo estaba incapacitado mentalmente para hacer una alegación de culpabilidad.

Debo reiterar que lo acertado era denegar la moción, pues emana diáfanamente que el peticionario no tiene derecho a remedio alguno bajo la Regla 192.1, *supra*.

En primer lugar, la determinación inicial sobre la no procesabilidad de un acusado se concede por parte del juez sentenciador que preside el proceso. Este posee la facultad para determinar si hay **base razonable** para poner en duda la capacidad mental del acusado. Para ello, el juez de instancia debe tener ante si indicadores que sugieran que el imputado no es capaz de comprender la naturaleza del proceso que se lleva en su contra.

Del expediente no surge que el juez que presidió el proceso tuvo ante si estos indicadores. Tampoco se presentó la prueba para establecer que el señor Rivera Montalvo padecía de tal incapacidad. Más aún, hemos examinado cuidadosamente la Minuta del tribunal y concluimos que esta no establece evidencia que nos lleve a concluir que durante el proceso el Tribunal de Primera Instancia incumplió con las garantías del debido proceso de ley.

Indudablemente, el foro primario venía obligado a garantizar y acreditar que la decisión del imputado, respecto a la alegación preacordada, es una informada, voluntaria, consciente e inteligente; conveniente a una sana administración de la justicia, y que ha sido lograda conforme a derecho y a la ética. Ello, naturalmente, se logra al examinar al acusado sobre esos aspectos. Sin embargo, no surge del expediente que el juez tuvo en su poder información, datos y documentos sobre la condición de salud mental del peticionario. Menos aún, surgen

indicios que puedan llevarnos a determinar que sus abogados hubieran ofrecido prueba para sostener que este no era procesable o hubieran tenido la intención de solicitar que se paralizaran los procedimientos por razón de la alegada incapacidad de su cliente. Por ende, la conclusión a la cual llega una Mayoría se fundamenta en especulaciones, en especial cuando se otorga mayor peso a las alegaciones del señor Rivera Montalvo dirigidas únicamente a aducir que no tuvo una defensa adecuada.

**Resulta difícil creer que ninguno de los ocho abogados que representaron al señor Rivera Montalvo durante las distintas instancias del proceso judicial —celebrado en fechas distintas y por delitos distintos— no hubiesen solicitado una evaluación al amparo de la Regla 240 de Procedimiento Criminal.** Ello, a pesar de conocer que mientras se ventilaba el caso el peticionario estaba siendo tratado en un hospital psiquiátrico. **Todo esto contrasta con el hecho de que cuando el peticionario hizo la alegación de culpabilidad estaba acompañado por dos de los ocho abogados y, además, se cumplió en detalle con el proceso riguroso que establece la Regla 72 de Procedimiento Criminal.**

Aquí no se trata de que el acuerdo de culpabilidad se hizo en detrimento de los derechos constitucionales del acusado, ni de que hubo un incumplimiento del acuerdo por parte del Ministerio Público. Tampoco hay indicios de actuaciones erradas o contradictorias del Tribunal de

Primera Instancia. En este caso, el señor Rivera Montalvo llegó a un acuerdo con la Fiscalía e hizo una alegación de culpabilidad estando representado por varios abogados durante todo el proceso en su contra. Al momento de aceptar la alegación de culpabilidad, el juez se cercioró de que su consentimiento fue voluntario e inteligente, que este entendía los derechos a los que estaba renunciando y le hizo las advertencias de rigor. Por consiguiente, el peticionario estaba consciente de las consecuencias de su decisión al declararse culpable.

**En cuanto a la procedencia de la vista al amparo de la Regla 192.1 de Procedimiento Criminal,** *supra*, **el inciso (b) de la regla dispone que el juez celebrará una vista, a menos que la moción y el expediente del caso concluyentemente demuestren que el peticionario no tiene derecho a remedio alguno.** Como mencionáramos, para determinar si es necesario celebrar la vista, el peticionario debe persuadir al tribunal —con datos y argumentos de derecho concretos— sobre la necesidad de atender sus planteamientos.

A la luz de lo anterior, si el tribunal sentenciador concluye que de la moción presentada por el peticionario no tiene derecho a un remedio, puede rechazarla sin la celebración de una audiencia por resultar innecesaria. El tribunal no está obligado a celebrar la vista una vez se presenta una solicitud al amparo de la Regla 192.1 de Procedimiento Criminal, *supra*, como plantea la Opinión

Mayoritaria. Ello, ya que la Regla expresamente establece que no se celebrará cuando la moción y el expediente del caso concluyentemente demuestren que el peticionario no tiene derecho a remedio alguno. Es decir, si bien la moción al amparo de la Regla 192.1 de Procedimiento Criminal puede presentarse en cualquier momento, un juez sentenciador no viene obligado a celebrar una vista para considerar una moción radicada al amparo de las disposiciones de esta regla cuando la moción y los autos del caso demuestran que el peticionario no tiene derecho a remedio alguno.

Ciertamente, el juez tiene un deber ineludible de cerciorarse de la procesabilidad del imputado, pero ello, claro está, si llegara a su atención indicio alguno que cuestione su competencia metal. En el caso de autos, no hay base razonable para creer que el peticionario estaba mentalmente incapacitado y que, por consiguiente, era necesario celebrar una vista de procesabilidad. No surge de los hechos que el juzgador hubiera tenido ante sí los elementos de juicio necesarios para requerir al fiscal o al abogado del señor Rivera Montalvo la información pertinente para examinarlo ante la creencia de que este se encontraba incapacitado. El peticionario tampoco estableció argumentos de derecho concretos para demostrar que era acreedor de una vista evidenciaria por falta de representación legal adecuada.

Por consiguiente, es forzoso concluir que el Tribunal de Primera Instancia no erró al denegar la moción que presentó el señor Rivera Montalvo en la que peticionó que se celebrara una vista evidenciaria. No era necesaria porque al examinar el expediente, los hechos y el trámite procesal, surge que no tenía derecho a un remedio bajo la Regla 192.1 de Procedimiento Criminal.

Finalmente, resulta oportuno reiterar que, de ordinario, en ausencia de una clara desviación del debido proceso de ley, no intervendremos con la facultad del Tribunal de Primera Instancia. Es harto conocido que los tribunales revisores no deben sustituir el criterio del foro primario, salvo se pruebe que este último actuó con pasión, prejuicio, parcialidad, abusó de su discreción o incurrió en error manifiesto.

Al considerar estos criterios, el Tribunal de Apelaciones concluyó que el foro de primera instancia no incurrió en abuso de discreción ni cometió un error de derecho al negarse a celebrar la vista evidenciaria que solicitó el peticionario. Coincido con su apreciación. Por ello, no erró al denegar expedir el recurso de *certiorari* presentado por el señor Rivera Montalvo.

Con mucho respeto reitero que difiero del razonamiento y del resultado al que llega una Mayoría de este Tribunal. El dictamen del Tribunal de Primera Instancia no está viciado ni contradice la noción de lo que constituye un procedimiento criminal justo. Por el

contrario, es mi criterio que éste es válido, correcto en derecho y debe sostenerse.

**IV**

Por todo lo anterior, disiento del curso decisorio tomado en este caso. En su lugar, confirmaría la *Sentencia* recurrida.

Edgardo Rivera García
Juez Asociado